**VIETNAM VETERANS OF AMERICA, INC., et al., Plaintiffs,**

v.

**GUERDON INDUSTRIES, INC., et al., Defendants.**

Civ. A. No. 85–244–JJF.

United States District Court,
D. Delaware.

Sept. 30, 1986.

Januar D. Bove, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del., Nicholas Gilman, and Daniel F. Hayes, of Smiley, Olson, Gilman & Pangia, Washington, D.C., for plaintiffs.

James F. Burnett, of Potter, Anderson & Corroon, Wilmington, Del., Jay G. Strum, and Jane W. Parver, of Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant U.S. Home Corp.

Lawrence C. Ashby, of Ashby, McKelvie & Geddes, Wilmington, Del., Stephen A. Weiner, of Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Shelter America Corp.

Josy W. Ingersoll, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., Reed E. Hundt, of Latham, Watkins & Hills, Washington, D.C., for defendant Guerdon Industries, Inc.

Alan I. Baron, and Ellen Scalettar, of Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Washington, D.C., of counsel to defendant Wood Bros. Homes, Inc.

Robert B. Young, of Young & Sherlock, Dover, Del., James H. O'Hagan, of Dorsey & Whitney, Minneapolis, Minn., for defendant Green Tree Acceptance, Inc.

Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, Del., for defendants Wood Bros. Homes, Inc., GDV, Inc., City Investing Co., City Investing Co. Liquidating Trust, Criterion Financial Corp., and Peter C.R. Huang.

Jo-Anne Weissbart, of Cravath, Swaine & Moore, New York City, of counsel to defendants GDV, Inc., City Investing Co., City Investing Co. Liquidating Trust and Peter C.R. Huang.

Richard K. Herrmann, of Bayard, Handelman & Murdoch, Wilmington, Del., Hassan Alaghband, of Gibson, Dunn & Crutcher, Washington, D.C., for defendant Fleetwood Enterprises, Inc.

Martin P. Tully, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Louise Ellen Teitz, of Thompson & Knight, Dallas, Tex., for defendant Redman Industries, Inc.

Alfred M. Isaacs, of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant Zimmer Corp.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant Kensington Mort. and Finance Co., Inc.

## OPINION

FARNAN, District Judge.

This action was brought under 28 U.S.C. § 1331 alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and the Truth In Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*, as well as under this Court's pendent jurisdiction with respect to state and common law claims. The First Amended Class Action Complaint, Docket Item ("D.I.") 31, alleges seven claims against fourteen separate defendants: Guerdon Industries, Inc., Wood Brothers Homes, Inc., GDV, Inc., City Investing Company, City Investing Company Liquidating Trust, Peter C.R. Huang, Fleetwood Enterprises, Inc., Redman Industries, Inc., U.S. Home Corporation, Commodore Corporation, and Zimmer Corporation (collectively the "non-financial defendants"), as well as Green Tree Acceptance, Inc., Kensington Mortgage and Finance Co., Inc., and Shelter America Corporation, Inc. (collectively the "financial defendants"). The financial defendants collectively moved to dismiss Claims III, V and VII of the Amended Complaint pursuant to (1) F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted; (2) F.R.C.P. 9(b) for failure to plead fraud with particularity; (3) F.R.C.P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue as to defendants Kensington Mortgage and Finance Co., Inc. and Shelter America Corp., Inc.; and additionally, to dismiss plaintiff Vietnam Veterans of America, Inc. (hereinafter "V.V.A.") for lack of standing. Similarly, the non-financial defendants collectively moved to dismiss Claims I, II, IV and VI of the Amended Complaint on the grounds that (1) each count fails to state a claim upon which relief can be granted under F.R.C.P. 12(b)(6); (2) Claims I, II and VI fail to plead fraud with the particularity required by F.R.C.P. 9(b); (3) lack of standing on the part of the individual plaintiffs; and (4) lack of standing on the part of V.V.A.

## FACTUAL BACKGROUND

As described in the Amended Complaint, this action arises from alleged abuse by the defendants of the mobile home loan guaranty provisions of the Veterans Housing Act of 1970, 38 U.S.C. §§ 1801–1827, as amended. Under this Act, the Veterans Administration ("V.A.") has administered a loan guaranty program to assist veterans and active duty military personnel in purchasing mobile homes. 38 U.S.C. § 1819(g); 38 C.F.R. § 36.4201 *et seq.* Currently, the V.A. guarantees $20,000 or 50% of the total loan amount, whichever is less, for loans to veterans for the purchase of mobile homes. 38 U.S.C. § 1819(c)(3). As a prerequisite for the guaranty, the manufacturer of the mobile home must certify as the true manufacturer's invoice cost the actual wholesale price charged by the manufacturer to the dealer, on an invoice prescribed by the V.A. on each sale. 38 C.F.R. § 36.4202(k). The V.A. then restricts the original principal amount of the loan to 120% of the wholesale cost, as certified by the manufacturer. 38 C.F.R. § 36.4204(d)(1)(i). If this principal loan amount exceeds 120% of the wholesale cost, the V.A. will not guarantee the loan.

The Amended Complaint also alleges that, on February 15, 1985, defendant Guerdon Industries, Inc. pleaded guilty in the U.S. District Court for the Northern

District of Georgia to five counts of violating 18 U.S.C. § 1001, by making false and fraudulent certifications of the wholesale price charged to dealers on invoices Guerdon submitted in connection with sales of its mobile homes under the loan guaranty program. Plaintiff alleges that the amounts certified by Guerdon substantially exceeded the actual wholesale price being charged to the dealer, and that money repaid to the United States by Guerdon represented payments made by the V.A. under its guaranty, after defaults by veterans. Amended Complaint, D.I. 31, ¶¶ 7–8.

Plaintiffs allege that these false certifications by Guerdon, as well as by other mobile home manufacturers, represent an "invoice packing" scheme by mobile home manufacturers, in conspiracy with mobile home dealers.[1] Under this scheme, the manufacturer certifies an inflated wholesale cost to be paid by the dealer. The manufacturer then secretly pays part of this inflated, or "packed" amount to the dealer as a kickback. Because the amount of a loan which the V.A. will guarantee is limited to 120% of this wholesale cost, the "packed" wholesale cost enables loans to be guaranteed for a higher principal amount than would ordinarily be possible. As a result, the veteran has to pay a higher principal amount of the loan, as well as higher finance charges over the term of the loan, than if the manufacturer had properly certified the wholesale cost. Plaintiffs allege that a significant number of veterans have been forced to default on their loans because of this inflated burden.

According to the Amended Complaint, plaintiffs' first claim is for injunctive relief under RICO against the non-financial defendants and Commodore; their second claim is for damages under RICO against the non-financial defendants and Commodore; their third claim is for damages under RICO against the financial defendants; their fourth claim is for damages under TILA against the non-financial defendants; their fifth claim is for damages under TILA against the financial defendants; their sixth claim is for damages under state law against the non-financial defendants; and, their seventh claim is for damages under state law against the financial defendants.

## DISCUSSION

### RICO Claims.

The non-financial defendants have moved to dismiss Claims 1 and 2 on the ground that plaintiffs have failed to state a claim under RICO, that these claims do not plead fraud with the particularity required by F.R.C.P. 9(b), that the claims fail to properly plead a conspiracy to violate RICO, and that RICO does not provide plaintiffs with a right to injunctive relief.[2]

### Failure to plead elements of RICO.

Dismissal for failure to state a claim is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1082 (D.Del.1984).

The non-financial defendants argue that the Amended Complaint does not properly plead an enterprise, as required by 18 U.S.C. § 1962(a), (b) and (c). They contend that, under Section 1962, the "person" subject to liability, as defined in Section 1961(3),[3] cannot be the same entity as the "enterprise", as defined in Section 1961(4).[4]

---

1. Plaintiffs have not named any mobile home dealers as defendants.

2. Plaintiffs' Claim 3 against the financial defendants under RICO will be discussed *infra*.

3. The "person" who is prohibited from committing the illegal acts enumerated by Section 1962 is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

4. The "enterprise" which the "person" acquired an interest in, established, or operated with illegally obtained income is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

According to the non-financial defendants, because the Amended Complaint does not allege an "enterprise" separate from the named corporate defendants, the plaintiffs' RICO claims must be dismissed.

In order to analyze this assertion, it is necessary to examine the language of the statute. Section 1962 prohibits three separate types of activities. Section 1962(a) provides that:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

Section 1962(b) provides that:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

Although not entirely clear from the above language, the relationship between the "person" and the "enterprise" is different in each subsection. Under Section 1962(c), the "person" subject to liability must be employed by or associated with an "enterprise". The Third Circuit has inter-

preted this requirement to mean that the "person" charged with violating Section 1962(c) cannot be the same entity as the "enterprise". *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 633–34 (3rd Cir.1984). If Section 1962(c) were not read in this way, an anomolous result would be reached—namely, that the person was employed by or associated with itself. *United States v. DiCaro*, 772 F.2d 1314, 1319 (7th Cir.1985).

However, the Third Circuit has not specifically decided whether the requirement of distinct identities applies as well to Sections 1962(a) and (b). Other circuits are split on the issue: The Fourth Circuit has suggested that this requirement applies to Section 1962 as a whole, *see United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982), while the Seventh Circuit has stated that under subsection (a), the liable "person" may be the same entity as the "enterprise"—that is, a corporate "enterprise" can be liable when it uses the proceeds of a pattern of racketeering activity in its own operations. *See Haroco v. American National Bank & Trust Co.*, 747 F.2d 384, 401–02 (7th Cir. 1984), *aff'd*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

This Court believes that the language of 1962(a) and (b), as well as the Third Circuit's discussion in *Hirsch*, indicates that the requirement for distinct identities of the "person" and "enterprise" is not present in subsections (a) and (b). As noted by the court in *Haroco*, with respect to subsection (a):

As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be sepa-

rate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering.

*Haroco,* 747 F.2d at 402 (emphasis in original).

Significantly, the Third Circuit in *Hirsch* noted this distinction, referring to the above-quoted passage from *Haroco.* In criticizing *United States v. Hartley,* 678 F.2d 961 (11th Cir.1982), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), in which the Eleventh Circuit held that Section 1962(c) in fact allowed the "person" to be the same entitity as the "enterprise", the *Hirsch* court stated that:

The court in *Hartley* based its decision in large part on its conclusion that to read "person" as separate from the "enterprise" would permit a corrupt corporation to evade punishment. Several courts have suggested, including the court in *Hartley,* that the result in *Hartley* could have been sustained if the indictment had been reworded, *or possibly if the corporation had been charged under a different RICO provision* (citing *Haroco,* 747 F.2d at 399–402.)

*Hirsch,* 751 F.2d at 633 (emphasis added).

■ Other courts in this Circuit have similarly construed Sections 1962(a) and (b). *See, e.g., B.F. Hirsch, Inc. v. Enright Refining Co.,* 617 F.Supp. 49, 51–52 (D.N.J. 1985) (on remand); *Commonwealth of Pa. v. Derry Construction Co.,* 617 F.Supp. 940, 943 (W.D.Pa.1985). Therefore, the Court concludes that a complaint alleging violations of Sections 1962(a) and (b) does not fail because the "person" is alleged to be the same entity as the "enterprise".

■ In this case, plaintiffs have alleged violations of Sections 1962(a), (b) and (c).[5] With respect to Sections 1962(a) and (b), the allegations of the Complaint, when read as a whole, are sufficient to state a claim under RICO. Plaintiffs allege that defendants Guerdon, Fleetwood, Commodore, Redman, U.S. Home, Zimmer, Huang, and City Investing Co. and its affiliated defendants, received income from a pattern of racketeering activity in which each participated as a principal, and that each invested this income or its proceeds to acquire, establish and operate enterprises engaged in commerce, in violation of Section 1962(a). Amended Complaint, D.I. 31, at ¶ 31. Similarly, plaintiffs allege that the above-named defendants have, through a pattern of racketeering activity, acquired and maintained interests in and control of enterprises engaged in commerce, in violation of Section 1962(b). *Id.* at ¶ 32. Plaintiff argues that, from the body of the Complaint, the "enterprises" referred to in these paragraphs are the named defendants themselves, high ranking officials of the defendants, as well as retail mobile home dealers and their employees. Plaintiffs' Answering Brief, D.I. 52, at 13–17. Although the Complaint could specify this more clearly, it is apparent that these are in fact the "enterprises" to which plaintiffs refer. In light of the liberal notice pleading requirements of the Federal Rules, this is a sufficient showing of the "enterprise" to put the defendants on notice of the claims against them. *See Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 790 (3rd Cir.1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[6] It is the function of

---

5. Plaintiffs' allegations with respect to Section 1962(d) will be discussed *infra.*

6. Defendants object to the vagueness of plaintiffs' references to "many enterprises" in the above-cited paragraphs of the Complaint. Although the Complaint as a whole makes evident that the defendants themselves, their officials, and retail mobile home dealers are alleged "enterprises", plaintiffs cannot rely on these vague references to include within the Complaint as "enterprises" other individuals or associations whose participation in the alleged scheme is not currently evident from the Complaint. Should other such "enterprises" be revealed, the Complaint must be amended to refer to them.

discovery to reveal the details of these claims, such as the identities of the officials and retail dealers referred to.

■ With respect to Section 1962(c), plaintiffs concede in their briefing that the liable "person" must be separate from the "enterprise" for purposes of this section. Plaintiffs' Answering Brief, D.I. 52, at 15–16. Plaintiffs argue in their briefing that their Complaint alleges an enterprise consisting of an association between the named defendants and the retail dealers. *Id.* Although a broad reading of the Complaint supports such an allegation, the plaintiffs' own wording of their Section 1962(c) claim precludes this interpretation. Amended Complaint, D.I. 31, at ¶ 33. There, plaintiffs allege only that the "enterprise" is the association composed of each of the named manufacturing defendants. No allegation is made that any retail dealers are part of the enterprise.

Also, plaintiffs allege that the named defendants conducted " ... the affairs of each such corporation and of *other enterprises* ..." through a pattern of racketeering activity. *Id.* (emphasis added). As discussed *supra,* Section 1962(c) is far narrower than subsections (a) and (b) in its definition of the proscribed relationship between the liable "person" and the separate "enterprise". Whereas subsections (a) and (b) prohibit investment of racketeering income in, operation of, acquisition of, or control of *any* enterprise, subsection (c) only prohibits the liable person from conducting the affairs of the particular enterprise with which he is employed or associated. 18 U.S.C. § 1962(a)-(c). Therefore, plaintiffs cannot allege that the defendants conducted the affairs of any "enterprise" other than the particular "enterprise" with which they are associated. If plaintiffs allege an "enterprise" consisting of an association among the defendants and the retail mobile home dealers, then they must allege, and prove at trial, that each defend-

ant conducted or participated in *that enterprise's* affairs through a pattern of racketeering activity, to show a violation of Section 1962(c). Similarly, if they allege an "enterprise" consisting of an association of the defendants themselves, then they must allege and prove that each defendant conducted or participated in that particular enterprise's affairs.[7] Participation in the affairs of some "other" enterprise does not state a claim under Section 1962(c). Since ¶ 33 does not make clear which enterprises are referred to, plaintiffs' allegations under Section 1962(c) must be dismissed.

■ Defendants also allege that plaintiffs have failed to properly plead "a pattern of racketeering activity", as required by each subsection of Section 1962. Under Section 1961(5), a "pattern of racketeering activity" requires the commission of at least two acts of racketeering activity within in a ten year period. *But see Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Here, plaintiffs have alleged that all the non-financial defendants and the retail dealers transmitted fraudulent invoices through the United States Mails, in violation of 18 U.S.C. § 1341, during the course of each plaintiff's purchase of a mobile home. Amended Complaint, D.I. 31, at ¶¶ 29, 45. Mail fraud, 18 U.S.C., § 1341, qualifies as a "racketeering activity" under Section 1961(1). Such an extended course of conduct clearly constitutes a "pattern", for purposes of Section 1961(5). *See Sedima,* 105 S.Ct. at 3285 n. 14. Therefore, plaintiffs have sufficiently alleged the requisite "pattern of racketeering activity". *See Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1082 (D.Del.1984).

*Failure to plead fraudulent acts with particularity.*

The non-financial defendants have also moved to dismiss Claims 1 and 2 on the

---

7. From the Seventh Circuit's discussion in *Haroco,* 747 F.2d at 400–401, it would appear that an "enterprise" consisting merely of an association of named defendants would be permissible under Section 1962(c) and Section 1961(4). *See*

*also McCullough v. Suter,* 757 F.2d 142, 143–44 (7th Cir.1985). However, given the court's ruling as to this portion of the Complaint, this issue need not be decided at this time.

ground that plaintiffs have failed to plead fraud with the particularity required by F.R.C.P. 9(b). Rule 9(b) provides, in pertinent part, that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." In applying this rule, courts should be mindful that "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3rd Cir.1983) (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1298, at 407 (1969)). As noted by the Third Circuit in *Seville:*

> Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville*, 742 F.2d at 791.

■ Plaintiffs have set forth their allegations of fraud with sufficient particularity to meet this standard. Plaintiffs allege that the manufacturing defendants falsely inflated the wholesale price for their mobile homes charged to mobile home dealers, and that this false certification was used to obtain V.A. guarantees for loans in excess of the amount otherwise permissible. Plaintiffs also allege that the dealers secretly accepted as payments from the manufacturers an amount representing the difference between the falsely certified wholesale price and the actual wholesale price. They allege that each individual plaintiff purchased a mobile home whose wholesale price had been so fraudulently certified, and that they have thereby been required to pay an excessive finance charge under their V.A. guaranteed loans. In Exhibit 1 to the Amended Complaint, they also list the dealers from which each individual plaintiff purchased his or her mobile home, the manufacturer of the home, and the date on which each home was purchased. These allegations are sufficient to set forth the circumstances of the alleged fraud. While the plaintiffs did not list the amount by which each certification allegedly exceeded the actual wholesale cost, or the date on which each certification took place, these are facts within the knowledge of the defendants and retail dealers, which can best be ascertained by plaintiffs through discovery. By informing defendants of the precise transactions at issue, and the fraud alleged to have occurred in those transactions, the Amended Complaint is clearly sufficient " ... to place the defendants on notice of the precise misconduct with which they are charged ..." *Seville*, 742 F.2d at 791. Therefore, claims 1 and 2 of the Complaint are sufficient to comply with Rule 9(b).

*Failure to properly plead RICO conspiracy.*

■ The non-financial defendants also move to dismiss plaintiffs' allegations of a RICO conspiracy, under Section 1962(d). They assert that plaintiffs have failed to allege the existence of an agreement among any of the defendants, or that, at most, they have merely alleged conspiracies to violate the underlying predicate acts of RICO, and not a conspiracy to violate RICO itself, as required by Section 1962(d).

It is the longstanding rule in this Circuit that:

> A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment.

*Black & Yates v. Mahogany Assn.*, 129 F.2d 227, 231 (3rd Cir.1941), *cert. denied*, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539

(1942). *See also, Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 595 F.Supp. 1385, 1400–01 (D.Del.1984).

In their brief, plaintiffs point to numerous paragraphs of the Complaint which they argue set forth the alleged facts constituting the conspiracy. Plaintiffs' Answering Brief, D.I. 52, at 20–23; Amended Complaint, D.I. 31, ¶¶ 8, 10, 11, 14, 29–36, 44–52. These portions of the Complaint allege that the manufacturing defendants entered into an agreement with retail dealers, as discussed *supra*, under which the manufacturing defendants would falsely certify wholesale prices, and the retail dealers would receive the difference between the false wholesale price and the actual wholesale price as a kickback. Thus, the "agreement" or "conspiracy" referred to clearly appears to be an alleged conspiracy to violate the substantive provisions of RICO, not merely a conspiracy to commit the predicate acts for the RICO allegations, that is, a conspiracy to commit mail fraud. Although "the Complaint does not allege precisely what each defendant's role in the scheme was, it does allege the outline of that scheme and does identify the participants. This is sufficient to put [the defendants] on notice of the claim against [them]." *Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1084 (D.Del.1984) (*quoting Farmers Bank of the State of Delaware v. Bell Mortgage Corp.,* 452 F.Supp. 1278, 1282 (D.Del.1978)). Such notice is all that is required of plaintiffs at this stage of the proceedings. *See Seville,* 742 F.2d at 790.

*Injunctive relief under RICO.*

In Claim 1, plaintiffs request this Court to enjoin the non-financial defendants from continuing to commit the acts complained of. Amended Complaint, D.I. 31, ¶ 38. Defendants argue that such injunctive relief is not available to private plaintiffs under RICO.

The enforcement provisions of RICO are found in 18 U.S.C. § 1964. Section 1964(a) grants district courts " ... jurisdiction to prevent and restrain violations of Section 1962 of this chapter...." Section 1964(b) provides:

(b) The Attorney General may institute proceedings under this Section.... Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

Section 1964(c) creates private rights of action, providing:

(c) Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys fee.

There is currently a split among courts that have considered the issue of whether Section 1964 grants plaintiffs a private right of injunctive relief. In dicta, the Second Circuit has stated that Section 1964(c) likely was not intended to provide such private injunctive relief. *See Sedima, S.P. R.L. v. Imrex Co., Inc.,* 741 F.2d 482, 489 n. 20 (2nd Cir.1984), *rev'd on other grounds,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Other courts, however, have granted such relief, or denied applications for injunctions without addressing the issue. *See, e.g., Aetna Cas. & Sur. Co. v. Liebowitz,* 570 F.Supp. 908, 909–10 (E.D.N.Y.1983), *aff'd on other grounds,* 730 F.2d 905, 909 (2nd Cir.1984); *USACO Coal Co. v. Carbomin Energy, Inc.,* 539 F.Supp. 807, 814–16 (W.D.Ky.1982); *Marshall Field & Co. v. Icahn,* 537 F.Supp. 413, 420 (S.D.N.Y.1982). Other courts have reserved judgment on this issue. *See Dan River, Inc. v. Icahn,* 701 F.2d 278, 290 (4th Cir.1983); *Bennett v. Berg,* 685 F.2d 1053, 1064 (8th Cir.1982).

■ Based upon the legislative history of RICO, and the discussions of this issue in the above-cited cases, the Court is of the opinion that Section 1964 was not intended by Congress to include a private right to injunctive relief. The original RICO bill did not explicitly provide any relief for private plaintiffs. The proposal to include

provisions for private relief was made before a house subcommittee by the American Bar Association and Rep. Sam Steiger. *Subcomm. No. 5 of the House Comm. on the Judiciary, Hearings on S.30 and Related Proposals, Relating to the Control of Organized Crime in the United States,* 91st Cong., 2nd Sess. 157, 520 (1970) (Proposal of Rep. Steiger), 548 (Proposal of the American Bar Association). Steiger's proposal in fact provided explicitly for a private injunctive remedy. *Id.* at 521. However, the provision for an injunctive remedy was rejected, and the final bill amended to provide only for a private action for damages. H.R.Rep. No. 1549, 91st Cong., 2nd Sess., *reprinted in* 1970 U.S.Code Cong. and A.D.News 4007, 4010, 4034. On the House floor, Representative Steiger again proposed adding a private injunctive remedy, but this amendment was withdrawn. 116 Cong.Rec. 35346 (1970). The bill as adopted thus included only the current private treble damages remedy. 18 U.S.C. § 1964(c). Subsequently, Congress rejected other attempts to amend RICO to provide private injunctive remedies. *See* S.16, 92nd Cong., 2nd Sess. 1972; S.13, 93rd Cong., 1st Sess.1973. *See Sedima,* 741 F.2d at 489 n. 20.

Clearly, where Congress has provided for a particular remedy, and specifically rejected another remedy, the court should not create an implied right of action to the very remedy that Congress rejected. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981). Therefore, plaintiffs' first claim, to the extent that it seeks injunctive relief, shall be dismissed.

*TILA Claims.*

The non-financial defendants argue that plaintiffs' Claim 4, alleging violations of the Truth In Lending Act (TILA), 15 U.S.C. § 1601 *et seq.,* should be dismissed.

■ TILA was enacted to regulate the terms and conditions of consumer credit. The Act's purpose is to ensure the informed use of credit by consumers through a meaningful disclosure of credit terms, so that consumers can compare different financing options and their costs. 15 U.S.C. § 1601. In keeping with this Congressionally declared purpose, TILA is to be liberally construed in the consumer's favor. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 365, 93 S.Ct. 1652, 1658–59, 36 L.Ed.2d 318 (1973); *Johnson v. McCrackin-Sturman Ford,* 527 F.2d 257, 262 (3rd Cir.1975).

This disclosure is achieved through TILA's requirement that creditors must, in certain situations, furnish the credit customer with a disclosure statement. *See* 15 U.S.C. §§ 1631, 1638. Under the Act, the definition of "creditor" " ... refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required ... " 15 U.S.C. § 1602(f) (as in effect until October 1, 1982).[8] The Act, and Regulation Z promulgated thereunder, also dictates which credit terms must be disclosed. *See* 15 U.S.C. § 1638; 12 C.F.R. § 226.1–15.

*Failure to make required disclosures.*

The non-financial defendants argue that plaintiffs have failed to allege that any of the specific disclosures required by TILA were not disclosed to them. Plaintiffs, they say, have alleged only that the non-financial defendants have failed to disclose a *wholesale* price differential, between the amount certified to the V.A. and the

---

**8.** TILA was amended by Pub.L. 96–221, compliance with which became mandatory on October 1, 1982. Pub.L. 96–221, 94 Stat. 178 (1980). Correspondingly, Regulation Z was amended to reflect the changes in the Act. *See* 12 C.F.R. § 226.1–.29 (as amended to March 15, 1982). Under the amendments, the definition of "creditor" applies only to persons who "regularly extend" credit, and to whom the debt arising from the transaction is initially payable. 15 U.S.C. § 1602(f) (1982). Plaintiffs concede that the Act as amended does not apply to the non-financial defendants. Therefore, for purposes of this Motion, the Court shall consider only the allegations of TILA violations in mobile home sales prior to October 1, 1982, under the TILA provisions in effect prior to the amendments. 15 U.S.C. §§ 1601 *et seq.* (1980).

amount actually charged to the dealer, including kickback payments allegedly made to the dealers to compensate for this differential. Thus, they argue that plaintiffs do not state a claim under TILA, which requires disclosure only of certain charges imposed at the *retail* level.

Section 1638, as in effect prior to October 1, 1982, requires the creditor to disclose, *inter alia* (1) the "cash price", that is, the price for which the goods could be purchased for cash; (2) any downpayments; (3) the difference between the cash price and downpayments; (4) "all other charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge."; (5) the total amount to be financed; and (6) the amount of the finance charge. 15 U.S.C. §§ 1638(a)(1)–(6) (1980); 12 C.F.R. § 226.8 (as in effect March 31, 1981).

Under these requirements, any charge which is part of either the "amount financed" or the "finance charge" must be itemized and disclosed. The Act defined finance charge as:

... The sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit ...

15 U.S.C. § 1605(a) (as in effect until October 1, 1982). This definition was intended to include not only "interest" but many other charges for credit. H.R.Rep. No. 1040, 90th Cong., 2nd Sess., 2 U.S.Code Cong. & Admin.News, pp. 1962, 1977 (1968); *Joseph v. Norman's Health Club, Inc.*, 532 F.2d 86, 93 (8th Cir.1976).

Plaintiffs allege that the non-financial defendants have failed to disclose the "true price of the manufactured homes" and the "true financing charges" for the credit received, because they did not disclose the amounts in excess of the actual wholesale cost paid to the dealers as kickbacks or retained by the non-financial defendants. D.I. 31, ¶ 57. In their brief, plaintiffs argue that these "kickbacks" are properly interpreted as components of the finance charge which the non-financial defendants were required to disclose. Their reasoning is that, since the falsely certified wholesale prices and accompanying "kickbacks" were created to avoid the V.A.'s loan guaranty limits, cash sales of mobile homes in which no credit was extended would not involve such falsified wholesale prices. Therefore, in the "packed" credit transactions, the falsely certified wholesale amount is improperly included in the *cash* price of the mobile home, even though it is properly part of the finance charge, since it would only be paid in credit transactions.

■ Plaintiffs' reasoning is spurious. A "finance charge", under § 1605 and Regulation Z, is a charge imposed directly or indirectly by the creditor *as an incident to the extension of credit.* The definition requires "that there exists some tying relationship between the imposition of a charge and the extension of credit for such a charge to constitute a 'finance charge' ". *Mondik v. DiSimo*, 386 F.Supp. 537, 538 (W.D.Pa.1974). Although, as plaintiffs allege, there is clearly no reason for defendants to falsely *certify* wholesale prices except in a credit transaction, they have not alleged how this certification constitutes a *charge* to them, imposed as an incident of the extension of credit. They have not alleged that the price dealers would charge for cash sales was different from the "cash price" of their homes, as defined by Regulation Z. *See* 12 C.F.R. § 226.2(n) (as in effect March 31, 1981). Although the wholesale price would be falsely certified in credit transactions only, plaintiffs have not shown how this certification changed the cash price. The "packed" charge therefore appears to be *part* of the "cash price", and the Act does not require lenders to disclose more than the lump sum cash price; that is, lenders are not required to break down the cash price into its components, such as wholesale price and dealer profit. *See* 15 U.S.C. § 1638(a) (as in effect until October 1, 1982). Although plaintiffs paid more in finance charges on their V.A. guaranteed loans because the loan amounts financed were higher than the V.A. would have al-

lowed, they have not alleged that these finance charges, as well as the actual cash price and total amounts financed, were not disclosed to them. In other words, although the "kickback" scheme violated the V.A.'s loan guaranty provision, none of the disclosure provisions of TILA are implicated. Therefore, accepting plaintiff's allegations as true, no violation of TILA is shown, and plaintiff's claims under TILA must be dismissed.

*Pendent State Law Claims.*

The non-financial defendants moved to dismiss plaintiff's Claim 6, asserting pendent state law claims. D.I. 31, ¶¶ 64–67. The non-financial defendants argue that plaintiff's factual allegations are insufficient to state a claim for relief under any theory of recovery.

Plaintiffs have incorporated into this claim the factual allegations discussed *supra.* The claim asserts:

> 66. The illegal acts of the non-financial defendants and the members of the non-financial defendant classes as aforesaid were in breach of implied and express contract, negligent, grossly negligent, malicious, willful, wanton, intentional and fraudulent and, in each case, caused the veteran purchaser to suffer harm and violated federal law, including 15 U.S.C. § 13 (the Robinson-Patman Act) and the common and statutory law of the State of Delaware and of those other states where the defendants so acted and the injuries were suffered, including those laws which prohibit conspiracy, conspiracy to defraud, commercial bribery, and deceptive and fraudulent sales and trade practices; and state Truth In Lending and RICO Acts.

D.I. 31, ¶ 66.

Although such a "shotgun" approach to pleading does not reflect the best legal practice, this Court cannot dismiss plaintiff's claim merely because plaintiffs have not been more precise in identifying the specific legal theories on which they expect to recover at trial. As discussed *supra,* plaintiffs factual allegations are sufficient

to set forth a claim under RICO, 18 U.S.C. §§ 1961 *et seq.* They have also pleaded fraud with sufficient particularity to satisfy F.R.C.P. 9(b). The Court cannot at this stage state that plaintiffs' factual allegations are insufficient to state claims under any of the numerous legal theories suggested by plaintiffs. Since such factual specificity is all that is required at this stage, the non-financial defendants' motion to dismiss plaintiffs' Claim 6 shall be denied. *See, e.g., Thiokol Chemical Corp. v. Burlington Industries, Inc.,* 319 F.Supp. 218, 221 (D.Del.1970).

*Liability of Financial Defendants Under "Holder In Due Course" Rule.*

Plaintiffs' third, fifth, and seventh claims, asserting RICO, TILA, and related state causes of action, are asserted against the financial defendants. Plaintiffs do not allege that the financial defendants participated themselves in any of the actions alleged with respect to the non-financial defendants. Rather, the sole basis of liability alleged with respect to the financial defendants is that, as holders of the financing agreements entered into by plaintiffs and retail mobile home dealers, the financial defendants are subject to all claims plaintiffs could assert against the retail dealers, under the Federal Trade Commission's "Preservation of Consumers' Claims and Defenses" Rule, 16 C.F.R. §§ 433.1 *et seq.* (hereinafter the "Holder in Due Course Rule"). On this basis, plaintiffs allege that the financial defendants are subject to RICO, TILA, and related state "common and statutory" liability. D.I. 31.

The "Holder in Due Course" Rule provides, in pertinent part, as follows:

> In connection with any sale or lease of goods or services to consumers, in or affecting commerce as 'commerce' is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to:
>
> (a) take or receive a consumer credit contract which fails to contain the following

provision in at least ten point, bold face, type:

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2. The Rule also provides that it shall be an unfair or deceptive practice for a seller to accept the proceeds of any purchase money loan, as defined by the regulation, unless a similar provision is included in the consumer credit contract. 16 C.F.R. § 433.2(b).

The financial defendants move to dismiss plaintiffs' claims, arguing that this Rule cannot be used to impose RICO or TILA liability on defendants who have themselves committed no proscribed acts under these statutes.[9] They argue that the Rule does not "create" any such statutory rights, but rather preserves for consumers claims they could assert against assignees of consumer credit contracts in the absence of the shield provided such holders by the Uniform Commercial Code or "waiver of defense" clauses.

As noted by the statement of basis and purpose issued by the FTC at the time this Rule was adopted, the Rule was intended to eliminate the abrogation of consumers' rights in credit sales transactions caused by the separation of the consumer's obligation to pay for merchandise from the seller's obligations in the underlying sales transaction. *See* 40 Fed.Reg. 53506 (Nov. 18, 1975). This separation occurs when a third party lender replaces the seller as the party to whom the consumer's debt is owed. Two methods can be used to require the consumer to pay the debt to this third party, irrespective of defenses he may have against the original seller. Under one method, the consumer executes a promissory note payable to the seller. The seller then negotiates the note to a third party, such as a consumer finance company. The third party then becomes a "holder in due course" of a negotiable instrument under the U.C.C., whom the consumer is obligated to pay regardless of any defenses or claims he may have against the seller. Under another method, the consumer enters an installment sales contract, which includes a provision that the consumer will not assert any defenses against assignees. When the contract is then assigned to a third party by the seller, this "waiver of defense" clause insulates the third party from consumer claims against the seller. 40 Fed.Reg. at 53507–08. Under either method, the "Holder in Due Course" Rule precludes this inequitable outcome by requiring that the above-quoted provision, preserving consumers claims against subsequent holders, be included in any consumer credit contract.

The "Holder in Due Course" Rule, by its own terms, does not create any claims or defenses for consumers in consumer credit contracts. Rather, the Rule provides only that failure to include the required provision in any consumer credit contract shall be an unfair or deceptive act or practice, within the meaning of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.* Any rights of the consumer under the terms of the required provision itself come into existence only when the provision is in fact included in the consumer credit contract. Therefore, any rights that this provision creates or preserves against holders are contractual rights only,

---

9. The Court has dismissed plaintiffs' TILA claims against the non-financial defendants on the ground that the "packed" wholesale prices were not items required to be disclosed. Thus, assuming that TILA is applicable to the finan- cial defendants, they would not be required to disclose the "packed" wholesale prices either. Therefore, the Court need not consider the applicability of TILA to the financial defendants under the "Holder in Due Course" Rule.

and can be enforced by plaintiffs only if their contracts contained this provision.

■ Here, plaintiffs do not allege that their contracts with the dealers contained this provision. They allege only that the financial defendants are holders of these contracts, and that as such holders, they are liable for all claims that plaintiffs could assert against the dealers. D.I. 31, ¶ 44. Regardless of how liberally the Court reads the factual allegations of the complaint, the Court cannot assume the existence of a contractual provision which is not alleged. Therefore, without an allegation that the "Holder in Due Course" provision was part of each plaintiffs contract with the respective mobile home dealers, plaintiffs have not stated a claim with respect to the contractual provision required by 16 C.F.R. § 433.2.[10]

Since plaintiffs' federal claims against the financial defendants have been dismissed, the Court at this time will not exercise jurisdiction over plaintiffs' state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, plaintiffs' seventh claim shall be dismissed.

10. Since plaintiffs have not alleged that the "Holder in Due Course" provision was in their contracts, the Court cannot properly decide at this time the extent to which such provisions would bind the financial defendants were they in plaintiffs' contracts. However, the Court notes that it is highly unlikely that RICO or TILA liability could be asserted against holders of consumer credit contracts on the basis of this Rule. As noted above, the purpose of the Rule was to eliminate the use of "waiver of defense" contract clauses, or the UCC's "Holder in Due Course" Rule, in consumer credit transactions, because such devices " ... separate the buyer's duty to pay for goods or services from the seller's reciprocal duty to perform as promised." Statement of Basis and Purpose, 40 Fed.Reg. at 53522. These devices are eliminated from credit transactions by the inclusion of the above-quoted provision in each consumer's credit contract. The effect is that assignment of such contracts operates as any ordinary assignment would, in the absence of the UCC's "Holder in Due Course" Rule or "Waiver of Defenses" Clauses. Thus, the Rule does not "create" rights that a consumer can assert, but rather ensures that available rights are not eliminated. *See Smith, Preserving Consumers Claims and Defenses*, 63 A.B.A.J. 1400, 1402 (1977).

*Standing of V.V.A.*

All defendants move to dismiss V.V.A. from this action as a party plaintiff on the ground that it lacks standing to sue.

In the complaint, plaintiffs allege that V.V.A. is a veterans organization, created to advance the interest and protect the rights of Vietnam era veterans and their families. Amended Complaint, D.I. 31, ¶ 13. They also allege that " ... many members of V.V.A. have purchased mobile (manufactured) homes manufactured by the named defendants ... and have been injured by the illegal acts of the defendants ...". *Id.*

■ An association or organization can show standing to maintain an action in one of two ways: first, it has standing in its own right to seek relief for injury to itself and to assert rights belonging to the association itself; and second, it may have standing as a representative of its members who have been injured. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975).

■ Here, V.V.A. argues that it has suffered sufficient injury to itself to afford

Therefore, the question becomes whether RICO or TILA themselves impose liability on assignees of consumer credit contracts. Under RICO, liability is imposed only upon the "person" who performs the acts proscribed by Section 1962. 18 U.S.C. § 1964(c). RICO contains no provision that anyone other than the person performing these acts can be held liable. *See Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23 (N.D.Ill.1982); *United States v. Forsythe*, 560 F.2d 1127, 1136 (3rd Cir.1977) ("the legislative intent was to make RICO violations dependent upon behavior, not status."). *See also, United States v. Harris*, 177 U.S. 305, 309, 20 S.Ct. 609, 611, 44 L.Ed. 780 (1900). Under TILA, liability of assignees is governed by 15 U.S.C. § 1641, which provides that a consumer may recover against assignees where the violation is apparent on the face of the disclosure statement. *See Price v. Franklin Investment Co., Inc.*, 574 F.2d 594, 602 (D.C.Cir.1978). Accordingly, it would appear that allowing recovery against holders of consumer credit contracts under RICO and TILA through the vehicle of "Holder in Due Course" contract provisions would, in effect, amend these statutes to impose liability on persons that Congress did not intend to be covered by these statutes.

it standing. Specifically, V.V.A. argues that it is an organization formed for the purpose of promoting veterans' welfare, that the defendants' actions have harmed veterans, and that to deny it standing to protect veterans' interests would therefore prevent V.V.A. from performing its function. Prevented from performing its function, V.V.A. would face loss of membership and dues. Plaintiffs' Brief, D.I. 52, at 55.

However, plaintiffs confuse injury from *denial of standing* with injury from the alleged actions at issue in the lawsuit. Obviously, the only injury relevant for purposes of determining standing is injury from the *defendants'* actions. As the Supreme Court stated in *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), with respect to standing to assert RICO claims:

> The plaintiff only has standing if, and can only recover to the extent that, *he has been injured in his business or property by the conduct constituting the violation.*

*Id.* at 3285–86 (emphasis added). While the injury alleged can be direct or indirect, it must nonetheless result from the conduct constituting the violation. Here, the only injury alleged from such conduct is the added cost paid by each individual plaintiff as a result of his or her mobile home purchase. V.V.A. has not alleged that it purchased any mobile homes itself, or that it directly or indirectly paid any of the added costs incurred by the other plaintiffs. Therefore, it has shown no direct or indirect injury to itself as a result of the defendants' conduct.

Since V.V.A. has alleged no injury to itself, and asserts no rights of its own, it may establish standing in this action, if at all, only as the representative of its members who have been injured. *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211–12. In *Hunt v. Washington Apple Advertising Com-* *mission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court set forth the test used to determine when an association may properly bring suit on behalf of its members:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.*, at 343, 97 S.Ct. at 2441.

Here, it is clear that the monetary relief requested will require the participation of the individual plaintiffs. The lawsuit involves the alleged false certification of the wholesale price of each mobile home purchased by the individual plaintiffs. As a result, it is alleged that each plaintiff paid increased principal amounts and finance charges on the loans extended. Also, it is alleged that some individual plaintiffs defaulted on their loans because of these increased payments. Clearly, proof unique to each individual plaintiff will be required to establish these allegations. Since participation of individual members of V.V.A. will therefore be required, the third prerequisite of *Hunt* has not been met, and V.V.A. has not shown that it has standing to bring suit on behalf of its members. *See Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441; *Brotherhood Railway Carmen v. Delpro Co.*, 549 F.Supp. 780, 783 (D.Del.1982).[11]

V.V.A. also asserts that, regardless of the need for individual proof as to the claims for damages, it has standing to maintain an action for injunctive relief which would accrue to all members. *See Warth*, 422 U.S. at 515, 95 S.Ct. at 2213–14. However, V.V.A. cannot demonstrate standing on this ground for several rea-

---

11. The Supreme Court's recent decision in *United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock,* — U.S. —, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), is not to the contrary. There, the Court reaffirmed the *Hunt* standard, but concluded that individual participation was not necessary because the suit raised only a "pure question of law" as to the Secretary of Labor's interpretation of a statute. *Id.* at 2532. Here, as noted above, individual factual proof will clearly be necessary.

sons. First, as discussed *supra*, there is no private right to injunctive relief under RICO. Second, the gravamen of the complaint is that plaintiffs' suffered monetary injury from defendants' kickback scheme. In such situations, monetary damages provide an adequate remedy at law. Where such an adequate legal remedy exists, injunctive relief will not be granted. *See United States v. American Friends Service Comm.*, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974); *Goadby v. Philadelphia Electric Co.*, 639 F.2d 117, 122 (3rd Cir. 1981). Third, V.V.A. does not seek relief uniformly applicable to all its members, such as a challenge to a statute or other official action. Rather, the relief sought will benefit only those members of V.V.A. who purchased mobile homes. *Cf. Warth*, 422 U.S. at 515, 95 S.Ct. at 2213–14; *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441; *Delpro*, 549 F.Supp. at 783–84; *Move Organization v. U.S. Dept. of Justice*, 555 F.Supp. 684, 687 (E.D.Pa.1983).

Accordingly, V.V.A. shall be dismissed from this action as a party plaintiff.