TWIN COACH COMPANY, Plaintiff, v. CHANCE VOUGHT AIRCRAFT, INC., Defendant.

(*May* 31, 1960.)

STOREY, J., sitting.

*William S. Potter* and *James L. Latchum* (of Berl, Potter and Anderson) for the Plaintiff.

*E. N. Carpenter, II* (of Richards, Layton and Finger) for the Defendant.

Superior Court for New Castle County, No. 836, C. A., 1959.

STOREY, J.:

The plaintiff herein is the Twin Coach Company, a Delaware corporation, with headquarters in Buffalo, N. Y. The defendant is Chance Vought Aircraft, Inc., a Delaware corporation, with headquarters in Dallas, Texas.

Defendant was the U. S. Navy's prime contractor for the manufacture of certain fighter aircraft, said aircraft having been designed and developed by defendant. Among other things, it had decided to subcontract the wing component assemblies, and with reference thereto, it had investigated various manufacturers as potential subcontractors. It ultimately selected six firms as being qualified to submit bids. Plaintiff was one of the six.

Defendant invited the six firms to a briefing in Dallas, where it attempted to explain the scope of the work to be involved. The invitees were also given the opportunity to inspect the facilities with which defendant was currently fabricating the subject assemblies. Representations were also made relative

to the productivity and capabilities of certain tools to be furnished to the successful bidder with which to do the job.

Each prospective bidder was also presented with a written request for proposal together with various related data to be used in preparing its bid. This data, as received by plaintiff, included, *inter alia,* a copy of the proposed fixed price subcontract (substantially identical to the one ultimately executed between the parties); certain project books, which were later referred to in and made part of the executed subcontract; and various drawings, specifications, operating sheets and manuals.

Plaintiff contends that its bid was substantially predicated upon these representations and data. The bid was accepted by defendant and a subcontract was executed on August 8, 1956.

This subcontract and its related documents provide for delivery by defendant to plaintiff of certain documents, tools, materials, completed parts and sub-assemblies. Defendant was also required to provide plaintiff with certain technical assistance and other information of a similar nature. Furthermore, plaintiff by its own efforts would acquire certain additional special tooling, using designs and specifications prepared and furnished by defendant. Plaintiff was also required to manufacture the assemblies pursuant to the above mentioned documents, using the above said technical assistance and tools. The finished wing units were to be shipped to defendant's Dallas plant where the completed aircraft would be ultimately assembled. The subcontract also included an arbitration clause for the settlement of disputes.

Various disputes arose. Arbitrators were selected. Claims and answers were filed, and the parties appeared before the arbitrators, in Dallas, in October, 1958. However, this attempt to arbitrate was futile, for the parties were unable to agree upon the arbitrability of many of plaintiff's claims. The arbitrators lacked the authority to determine their own jurisdiction, so an adjournment was granted to enable plaintiff to obtain a court

ruling on the arbitrability of its several claims. To this end, plaintiff instituted a suit for declaratory judgment in the U. S. District Court for the Northern District of Texas. This action was dismissed for want of jurisdiction of the subject matter. Plaintiff took an appeal to the U. S. Court of Appeals for the Fifth Circuit. Of course, the issue there involved is solely one of jurisdiction; and I am advised that it is still pending.

The complaint in the instant case was filed on July 30, 1959, and is divided into two "Causes of Action", or counts. The "First Cause of Action" contains 23 numbered paragraphs, and is characterized by its drafters as setting forth those defaults and misrepresentations, etc., of the defendant as were embraced in plaintiff's arbitration claims. Its *ad damnum* clause alleges damages totalling $1,452,824. The "Second Cause of Action" claims damages in the amount of $205,000 emanating from defendant's allegedly wrongful refusal to arbitrate all of those claims set forth in the first count as per the contractual agreement between the parties.

With reference to plaintiff's "First Cause of Action", defendant filed a Motion pursuant to Rule 12; with reference to the "Second Cause of Action" it filed an answer, counterclaim and defense. Decision on said motion has been delayed to the present time by virtue of plaintiff's interposed motion to stay, which was denied. Interrogatories have also been filed by defendant seeking information substantially similar to that sought per its Rule 12 motion. These were answered, and at the present time Judge Carey is considering a motion of defendant pursuant to Rule 37 which seeks to elicit more complete answers.

The defendant divides its Rule 12 motion into two parts. It first moves pursuant to Rule 12(e) for a more definite statement of the complaint in the following respects: (a) whether plaintiff's "First Cause of Action" is based on a breach of contract or on a tort, or both; (b) if on both, then which portions relate to breach of contract and which to tort; (c) which actions

of defendant are related to which of the alleged damages suffered by plaintiff; (d) specifically, what are plaintiff's special damages, per Rule 9(g); and (e) specifically, what are the elements of the alleged fraud or misrepresentation, per Rule 9(b). The second part is pursuant to Rule 12(f) and moves that the allegations in the First Cause of Action relating to damages be struck for the reason that said allegations do not comply with Rule 9(g) requiring that items of special damages be specifically stated.

An overall view of the "First Cause of Action" of the complaint as amended would now seem desirable. Pars. 1 to 4 set forth such background material as has been referred to above. Par. 5 describes the bid briefing in Dallas very much as described above. Par. 6 is of considerable importance and hence I quote:

"The information contained in the request for proposal and related data and the information obtained at the bid briefing included the representations by Defendant which are more fully set forth in paragraphs 14, 17, 19 and 21 hereafter. After consideration of the information contained in the request for proposal and related data, and of the information obtained at the bid briefing, and in reliance upon all such information, Plaintiff submitted bids which were later accepted by Defendant."

Pars. 7 to 11 outline the duties and obligations of both parties with respect to such matters as tools, parts, specifications, deliveries, and technical assistance arising out of the subcontract, pretty much as I have set forth. Aversions are also made with respect to the overall dollar amount of the subcontract, the fact that plaintiff has performed it, and has been paid the fixed dollar amounts therein specified.

Par. 12 is, also, rather pertinent, and so I quote:

"The information referred to in Paragraph 6 was incorrect and misleading in material respects. Defendant knew or should

have known that such information was incorrect and misleading in such respects. Under all the circumstances, including those described above in Paragraph 5, Defendant intended Plaintiff to rely upon the information referred to in Paragraph 6 as an inducement to entering into the Subcontract and Plaintiff did rely thereon in entering into the Subcontract, to Plaintiff's damage, as hereinafter set forth."

Par. 13 alleges defendant's breach of duties or obligations to furnish plaintiff in sufficient time with adequate, correct and proper parts, materials, project books, drawings, plans, specifications, engineering information and other technical assistance, with the conclusion that the scope of the work was substantially increased to plaintiff's damage.

Par. 14 is one of those referred to in Par. 6 and, by reference thereto, in Par. 12. I will, therefore, quote it as representative of the specificity set forth in the similarly referenced Pars. 17, 19 and 21, which will be merely summarized in their proper sequence. Thus Par. 14 says:

"The project books, which were incorporated in the Subcontract by reference and form a part of the Subcontract, contain under the heading of "General Tooling Policy", certain representations by the Defendant that the contract tools which Defendant would furnish, plus the line type assembly tools shown as vendor jig responsibility on the Subcontract Schedule Plan, were planned to be adequate to produce the requirement of thirty aircraft per month plus spares within Defendant's facilities, and that the tools, as designed and constructed, were producing satisfactory parts and assemblies within Defendant's facilities. Plaintiff is informed and verily believes that said tools were not adequate to produce the requirement of thirty aircraft per month plus spares within Defendant's facilities and were not producing satisfactory parts and assemblies within Defendant's facilities."

Par. 15 alleges defects in parts furnished by defendant for assembly of first 20 wing assemblies with a resultant increase in the scope of plaintiff's workload to correct said defects. Par. 16 alleges defects in tools and tool designs specified or furnished by defendant, said defects giving rise to increased work and expense to plaintiff to effect the necessary corrections. Par. 17 refers to allegedly misleading representations by defendant that the project tools would be sufficient in kind and number to produce the required assemblies. Since the tools were not as represented, additional and supplemental tools became necessary, with a resultant increase in work and expense for plaintiff. Par. 18 refers to Pars. 16 and 17 and alleges that before the defects and added requirements therein complained of were discovered and remedied, the plaintiff had manufactured various parts which ultimately failed to meet the specifications, thus requiring reworking or replacement. Par. 19 refers to defendant's representations as to the scope of the work involved, and avers that they were inaccurate and so more work was required than had been represented or could have reasonably been inferred, this increase being in addition to the specific increases referred to in Pars. 15, 16, 17 and 18, above. Par. 20 alleges that defendant's various breaches and defaults precluded plaintiff from achieving learning curve cost levels and cost reductions, as had been anticipated by plaintiff in submitting its bid, in accordance with industry practice. Par. 21 alleges that the bill of materials, as furnished by defendant, was incomplete and so plaintiff's bid was lower than it would normally have been had it known of the omitted parts. Par. 22 refers to a settlement between the parties stemming from certain engineering charges, the price specified in said settlement not having been paid by defendant. Par. 23 is the *ad damnum* clause setting forth total damages under the "First Cause of Action" in the amount of $1,452,824.

The first part of defendant's motion is pursuant to Rule 12 (e), which must be construed in the light of Rules 8(a) (1) and (2), 8(e) (1) and (2), 8(f), 9(b), 9(g), and 10(b).

■ Since there are quite a few different rules to consider in judging the efficacy of this complaint, it might be desirable to synthesize them into one organic whole. Thus, I would say that this complaint must show the plaintiff to be entitled to relief by way of a short and plain statement of the claim, each averment therein being simple, concise and direct—technical forms of pleading being unnecessary. However, where fraud is averred it must be done with particularity, and where special damages are claimed they must be specifically stated. Of course, there may be a combination within a single count of two types of claim (*i.e.*, one in tort and the other in contract), unless is appears that they were individually founded upon separate transactions or occurrences and that a distinct count for each would facilitate the clear presentation of the matters therein set forth. The complaint must then set forth a demand for judgment for the relief to which plaintiff deems itself entitled. The final result will be construed so as to do substantial justice, and should it appear to be so vague or ambiguous as to make it unreasonable to require the defendant to frame a responsive pleading, then a more definite statement will be required to correct its defects.

To resolve this problem, I shall pose, and attempt to answer a series of related questions. My plan is to analyze the pertinent requirements set forth in my synthesis paragraph above, although I will not adhere to the order therein utilized. I observe at the offset that the complaint does aver sufficient facts upon which to base a claim for relief; it is reasonably short considering the nature of the case; and there apparently are two types of claims, *i.e.*, one for fraud and one for breach of contract.

■ *First*: Is the element of fraud pleaded with sufficient particularity to satisfy the requirements of Rule 9(b)? To begin with, in every action of fraud there must be a deceiver and his victim. (1) The deceiver must make a false representation of a material fact to the victim. (2) The deceiver must have had knowledge of the falsity of his repressentation, while his victim

must have been ignorant thereof. (3) The representation must have been made with the threefold intent that the victim believe it to be true, act in reliance thereon, and be deceived thereby. (4) The victim must have so believed, acted, and been deceived, as well as having been damaged thereby. See *Traylor Engineering & Mfg. Co. v. National Container Corp.*, 6 *Terry* (45 *Del.*) 143, 70 *A.* 2d 9, and *Strasburger v. Mars., Inc.*, 7 *Terry* (46 *Del.*) 274, 83 *A.* 2d 101. While the above definition will be valid as a general rule, it may be subject to modification, such as where the deceiver does not have actual knowledge of the falsity of his representation, but, rather, recklessly makes the representation without heed for its validity, or makes it under circumstances not justifying belief in its truth. See *Nye Odorless Incinerator Corp. v. Felton*, 5 *W. W. Harr.* (35 *Del.*) 236, 162 *A.* 504; *Words and Phrases*, "Fraud", Knowledge of falsity of misrepresentation, p. 78 *et seq.*

In its brief, plaintiff urges that the complaint, in this respect, is adequate, for the principal elements of fraud have been alleged, in that: (1) there are detailed descriptions of the representations, coupled with allegations of their falsity, as set forth in Pars. 14, 17, 19 and 21; (2) Par. 12 sets forth allegations of their materiality, defendant's knowledge (or duty to have knowledge) of their falsity, and defendant's intent that plaintiff rely thereon; and (3) in Pars. 12, 17, 19 and 21, it is alleged that plaintiff relied on defendant's representations to its injury as set forth.

Having read these pertinent paragraphs and compared them with plaintiff's characterization thereof, as just set forth, I reach the following conclusions:

(1) The elements of knowledge have not been properly averred. To say "Defendant knew or should have known" is not adequate. Edgerton, Ch. J., dealt with an identical point in *Merchant v. Davies*, 1957, 100 *U. S. App. D. C.* 258, 244 *F.* 2d

347, 348; 24 *Fed. Rules Serv.* 9b.1, Case 2, saying on Petition for Rehearing:

"Appellant also says the phrase 'known or should have been known' sufficiently alleged that they knew, because Rule 8(e) (2), *F. R. Civ. P.*, provides that 'When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.'

"It is not clear that appellant had any intention of alleging actual knowledge, alternatively or otherwise. Moreover in this context, to allege knowledge is to imply fraud. Rule 8(e) (2) creates no exception to the principle that a charge of fraud must be clear and specific. The phrase 'known or should have been known' does not meet the requirement of Rule 9(b) that 'In all averments of fraud or mistake,* the circumstances constituting fraud or mistake shall be stated with particularity'."

Of course, if plaintiff does not desire to claim actual knowledge of the falsity on behalf of defendant, but instead desires to aver such an exception to the general elements of fraud as I have above set forth, then greater particularity will still be required to meet the requirement of Rule 9(b) so as to demonstrate the requisite recklessness, or duty, or what not, on behalf of defendant in order to give rise to said exception.

■ The knowledge element on the part of plaintiff is adequately pleaded for as Webster tells us to rely is "to rest with confidence, as where satisfied of the veracity, integrity, or ability of persons, or of the certainty of facts or of evidence; to have confidence; to have trust; * * *", and here plaintiff avers a reliance.

■ (2) The time the representation was made has been held to be one of the matters embraced in the phrase "cir-

---

*The Delaware Rule 9(b) says "* * * fraud or negligence * * *."

cumstances constituting fraud". *United States v. Hartmann, D. C. Pa.* 1942, 2 *F. R. D.* 477, 478. Defendant contends that since the tort was committed in Texas a two year statute of limitations of that State would be an affirmative defense that would have to be specifically pleaded under Rule 8(c). Be that as it may, I believe the element of time to have been adequately pleaded. If I read the complaint properly, the misrepresentations seem to have all occurred in the inducement of the contract. This would be between June 1956 when plaintiff was selected as a potential bidder and 8 August 1956 when the contract was executed. Presuming I am correct in my interpretation, and that defendant is correct in its statement of the Texas Statute and the applicable law, adequate information is available to plead a two year limitation, since the complaint was not filed until 30 July 1959. Thus, considering this case *sui generis,* I would not grant a Rule 12(e) motion on that basis alone. However, since it will be necessary for the plaintiff to redraft its pleading in conformity with this opinion, a separation will ultimately be required such as should eliminate whatever confusion plaintiff has engendered. If, however, it should appear from the redraft that a greater specificity in time, than has thus far been advanced, is required to satisfy the contention as above set forth, then, such specificity will be included in the redraft as submitted.

(3) My observations on organization will be dealt with below.

 *Second:* Since there appears to be two types of claim, *i.e.,* one in tort and one in contract, is it desirable to leave them together in one count or would it facilitate the clear presentation of the matters therein alleged should they be separated per Rule 10(b)? As was noted above, defendant's Rule 12 motion did not formally urge the application of Rule 10(b), however, it was so urged in defendant's brief. Prof. Moore contends that the original form of Rule 12(e) was easily broad enough to support a Rule 10(b) type of objection, but since 12(e) has

been amended so as to limit its use to only those pleadings "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading", such amendment takes many cases out of the area where a 10(b) motion can be facilitated through the offices of 12(e). See 2 *Moore's Fed. Practice* (2d Ed.) ¶ 10.04. However, I am of the opinion that this case is of the type where the pleadings are so vague and ambiguous as to activate Rule 12(e) and hence make an application of 10(b) permissible. But even if this should not be so, once I have decided to require a pleading to be amended, I may of my own accord require the pleader to separate his various claims into separate counts. *American Fomon Co. v. United Dyewood Corp., D. C. S. D. N. Y.* 1938, 1 *F. R. D.* 171; 1 *Fed. Pract. & Pro.* (Rules Ed.) § 324, p. 563.

The objective of Rule 10(b) is clarity in pleading, *Moore, op. cit.* ¶ 10.03. This is, of course, the same end as is sought by Rule 8(a) and (e).

Here we have in plaintiff's "First Cause of Action"— or to use the proper parlance, "First Count"—at least two claims. The word "claim" as used in these rules designates "a group of facts or occurrences which gives rise to a right enforceable in the courts and takes the place of the well known phrase 'cause of action' ". 1 *Fed. Pract. & Pro.* (Rules Ed.) § 324, p. 562.

There is a claim in tort founded upon fraud. There is also a claim in contract for breach. Both are intermingled as has been demonstrated above. Furthermore, there is but one *ad damnum* clause wherein all alleged damages are grouped into one undifferentiated figure. The fraud claim seems to have arisen solely from those negotiations and transactions which occurred prior to the execution of the subcontract. The breach of contract claim has to have arisen from occurrences subsequent to said execution. These are such separate occurrences as are referred to, in Rule 10(b). It is, of course, quite possible that

many of the facts and occurrences set forth in the fraud count might be significant in the breach count, as where, for example, an allegedly false statement is made as an inducement thus giving grounds for a fraud claim, the same false statement might later be included in the executed subcontract where its non-performance would give rise to a claim for breach. Such statement in the first count can be included in the second count by reference per Rule 10(c).

Therefore, for the purpose of facilitating a clearer presentation of the averred claims, I hold that this complaint must be redrafted so as to divide the so-called "First Cause of Action" into two separate counts, one of which will be for the breach of contract claim, and the other for the fraud claim.

This holding makes it unnecessary to discuss the propriety of combining two claims in one count as per the permissiveness of Rule 8(e) (2). However, it is necessary to observe that the damages claimed in one count because of an allegedly false statement in the inducement may be the same as those damages claimed for breach of the same statement when considered as a contractual clause. Insofar as this type of situation might arise, such claims will be advanced in the alternative per Rule 8(e) (2).

*Third*: Are special damages claimed, and if so are they plead with the specificity required by Rule 9(g)? It seems quite possible that in a case of this nature involving complex commercial and technical transactions that some of the damages legitimately claimed would fall into one of the various definitions of special damages. However, at this state of the proceedings, I am unable to say as a matter of law, precisely what portion of plaintiff's alleged damages are "special" and which are "general". Defendant has merely urged that "some" of plaintiff's damages must be special. To illustrate its position, defendant refers to Par. 17 of the complaint with the observation that "the increased scope of work and the additional expense incurred in

producing component assemblies as the result of reliance upon an alleged misrepresentation * * * are natural but hardly inevitable consequences of the fraud or breach of contract which is the basis of the plaintiff's action." Defendant then cites *Bullitt v. Delaware Bus Co.*, 7 *W. W. Harr.* (37 *Del.*) 62, 180 *A.* 519, 520, a 1935 case wherein Layton, C. J., laid out the principles of common law pleading *re* special damages, setting forth the following definitions:

"Special damages are those that are the natural, but not the necessary result of the act complained of. Consequently, they are not * * * implied by law.

"General damages are those necessarily and naturally resulting from the wrongful act or omission or which may be legally implied therefrom; or, as said in *Baldwin v. Western R. Corporation,* 4 *Gray* (Mass.) 333, 'such damages as any other person, as well as the plaintiff, might, under the same circumstances, have sustained, from the acts set out in the declaration.' * *"

Taking these definitions, or any of the others, I have read, it seems virtually impossible to declare as a matter of law that defendant's contention about Par. 17 of the complaint is valid. To make such a pronouncement upon a valid foundation, a great deal more details would be required than I now have available. But even if it be in some sense a special damage, I am of the opinion that for the purposes of this case, *sui generis,* there are sufficient facts pleaded to adequately advise the defendant of the probable evidence which will be introduced and to enable him to pursue discovery and prepare his defense. See 1 *Fed. Pract. & Pro.* § 308, p. 558. In a case of this complexity, some balance has to be struck between such Rules as 9(g) and 8(a). The pleadings must be construed so as to do substantial justice (Rule 8(f)). Hard practicality dictates that a certain tolerance be exercised in a case such as this. On any one item in the claim it is conceivable that if all the background facts

could be set forth at this time for examination by the parties and the Court, that a difference of opinion might still exist as to whether the particular item was a claim for special or general damages. It would, of course, not be expected that the pleadings in such a case would set forth the amount of information necessary to formulate nice opinions on each such issue. Indeed, such a procedure would be proscribed as a pleading of evidence. And, of course, such a pleading, if permitted, would make moot the issue of particularity.

I am satisfied that once the complaint is redrafted in conformity with my instructions herein set forth, that it will adequately fulfill its notice serving function under our Rules of Procedure. If it should appear in the course of the pretrial discovery process that certain amendments to the pleadings are desirable to more adequately deal with any relevant issue of special damages, then such amendments may be had in conformity with Rule 15, if such amendments are reasonably required to do substantial justice.

In ruling as I have on this portion of defendant's Rule 12(e) motion, I have effectively disposed of that portion of defendant's motion as founded on Rule 12(f), wherein it was moved that that portion on the "First Cause of Action" relating to damages should be struck for failure to comply with Rule 9(g).

To summarize my holding herein, I require plaintiff to redraft its complaint. The "First Cause of Action" must be split into two distinct counts, one of which will set forth the tort claim for fraud and misrepresentation in the inducement of the subcontract, whereas the other will advance the claim for breach of the subcontract. The damages will be calibrated accordingly. The element of fraud shall be pleaded with greater particularity insofar as defendant's knowledge is concerned, and otherwise the pleadings shall generally aver those elements of fraud as set forth in my definition. All applicable rules shall be kept in

mind by the drafters insofar as brevity, clarity, order and specificity are concerned. When this is done, the complaint should satisfy any legitimate request advanced by defendant in its Rule 12(e) motion. That portion of defendant's motion re Rule 12(f) is without merit in light of the above holding.

On presentation, Order, in conformity with this decision, will be entered.