## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MATTHEW B. MOONEY, | ) | |
| | ) | C.A. No. N17C-01-225 RRC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PIONEER NATURAL RESOURCES | ) | |
| COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: July 27, 2017
Decided: October 24, 2017

On Defendant Pioneer Natural Resources Company's Motion to Dismiss.
**GRANTED, WITH LEAVE FOR PLAINTIFF TO AMEND THE
COMPLAINT.**

## <u>MEMORANDUM OPINION</u>

Matthew B. Mooney, Esquire, Old Greenwich, Connecticut, *pro se.*

William M. Lafferty, Susan W. Waesco, and Richard Li, Morris, Nichols, Arsht &
Tunnell LLP, Wilmington, Delaware; Kevin T. Abikoff and Benjamin Britz,
Hughes Hubbard & Reed LLP, Washington, DC, *pro hac vice*, Attorneys for
Defendant Pioneer Natural Resources Company.

COOCH, R.J.

1

# I. INTRODUCTION

This is a one count common law fraud action brought by Matthew Mooney ("Plaintiff") against Pioneer Natural Resource Company ("Defendant") alleging fraudulent misrepresentation of financial performance.[1] Plaintiff asserts that, as a result of his detrimental reliance on various quarterly reports and public statements of Defendant, he "suffered a financial loss."[2] Plaintiff's claim rests on the assertion that Defendant fraudulently misrepresented its financial stability in several instances in order to induce investors to buy its securities.[3] Defendant argues that Plaintiff invested during a downturn in commodity prices and is now utilizing "a scattered, one-count common law fraud" claim to recoup his investment.[4]

The issue at this stage is whether Plaintiff has met the heightened pleading standard of Delaware Superior Court Civil Rule 9(b) by having pled a claim for common law fraud with adequate particularity. Defendant has moved to dismiss for failure to state a claim pursuant to Delaware Superior Court Rule 12(b)(6).

This Court concludes that Plaintiff's complaint fails to meet the heightened pleading standard of Rule 9(b). The Court thus grants Defendant's motion to dismiss, without prejudice with leave for Plaintiff to amend the complaint.

# II. FACTS AND PROCEDURAL HISTORY

Plaintiff is an investor who allegedly invested in "securities [of Defendant] and suffered a financial loss."[5] Defendant is "an oil and gas exploration and production company incorporated in Delaware."[6]

The facts are somewhat complex (additional facts are set forth in the "Discussion" section) but may be essentially summarized as follows: Defendant regularly made quarterly public disclosures regarding its commodity derivative portfolio.[7] Defendant made such a disclosure on January 6, 2015 via a news release.[8]

---

[1] Pl.'s Compl. ¶ 1.
[2] *Id.*
[3] *Id.*
[4] Def.'s Op. Br. in Support of its Mot. to Dismiss at 1-2.
[5] Pl.'s Answ. Br. at 7.
[6] Def.'s Op. Br. in Support of its Mot. to Dismiss at 1.
[7] *Id.* at 3.
[8] *Id.*

In that January 2015 disclosure, Defendant announced that it had updated its commodity derivative schedule by converting approximately 85% of its 2015 oil derivative contracts from three-way collars to fixed-price swaps.[9] Specifically, the Chief Executive Officer of Defendant, Scott D. Sheffield ("Sheffield") stated:

> Over the past five years, our derivative strategy has successfully protected our cash flow and allowed us to execute a highly productive drilling program. In light of the weak oil price environment forecasted for 2015, we elected to convert most of our 2015 oil derivatives from three-way collars to fixed-price swaps to establish a firm oil price floor and lock in the corresponding cash flow. Pioneer's adjusted derivative portfolio, combined with our exceptional assets and strong balance sheet, positions the Company to manage through the current price downturn and emerge as an even stronger company when oil prices recover.[10]

Defendant released its fourth quarter ("Q4")[11] results in a press release on February 10, 2015.[12] Defendant disclosed in its fourth quarter statement that its 2015 capital budget would be funded both by operating cash flow of $1.7 billion and cash on hand of $1.0 billion.[13]

On May 5, 2015, Defendant released its Q1 2015 results via a press release, which reported a net loss of $78 million and also that Defendant's cash and cash equivalents had decreased from $1.025 to $383 million.[14] Sheffield stated that Defendant was "maintaining a strong balance sheet at the end of the first quarter with $383 million of cash on hand and a net debt-to-book capitalization of 21%."[15]

On May 22, 2015, Plaintiff "established an investment position in Defendant's securities.[16] The nature of this "investment position" was not alleged. Plaintiff "extended his investment" on eight separate occasions between May 29, 2015 and August 4, 2015.[17]

---

[9] See id.; see also Pl.'s Answ. Br. at 7.

[10] Pl.'s Compl. ¶ 14.

[11] Hereinafter "Quarter" will be referred to by "Q" followed by a number, 1 through 4, to identify which quarter of the year.

[12] Def.'s Op. Br. in Support of its Mot. to Dismiss at 4; Pl.'s Answ. Br. at 8.

[13] Def.'s Op. Br. in Support of its Mot. to Dismiss at 4; Pl.'s Answ. Br. at 8-9.

[14] Def.'s Op. Br. in Support of its Mot. to Dismiss at 5.

[15] Pl.'s Answ. Br. at 9 (internal brackets omitted).

[16] Pl.'s Answ. Br. at 10; Def.'s Op. Br. in Support of its Mot. to Dismiss at 6.

[17] Pl.'s Compl. ¶ 30-41.

Defendant provided an update on its production and derivatives hedging program for Q2 of 2015, on July 22, 2015.[18] Defendant stated that it had "continued to strengthen its commodity derivatives position in order to protect the Company's cash flow. Current derivatives coverage for forecasted oil production is approximately 90% and 75% for 2015 and 2016, respectively. Derivatives coverage for forecasted gas production is approximately 85% and 65% for 2015 and 2016, respectively."[19]

Defendant reported Q2 2015 results on August 4, 2015, which showed another decrease in its cash balance.[20] Defendant earned $.10/share on $648 million of revenue.[21]

On August 7, 2015, Plaintiff partially divested himself of his position in Defendant's securities.[22] On August 24, 2015 (a day apparently known as "Black Monday," when "world stock markets crashed and U.S. markets suffered their biggest sell-off in four years"),[23] Plaintiff fully divested himself of Defendant's securities.[24] On January 19, 2017, Plaintiff brought this lawsuit.[25]

## III. THE PARTIES' CONTENTIONS

### A.    Defendant's Contentions

Defendant's overarching contention is that "[h]aving timed his investment decisions poorly, Plaintiff hunts for someone to blame."[26]

Defendant argues that Plaintiff's claim must be dismissed because he has failed to adequately plead a claim for common law fraud with the requisite particularity, pursuant to Delaware Superior Court Civil Rule 9(b). Defendant alleges that Plaintiff has failed to articulate a cause of action for each of the five common law fraud factors: (1) a false representation made by the defendant; (2) the

---

[18] Def.'s Op. Br. in Support of its Mot. to Dismiss at 6; Pl.'s Answ. Br. at 11.
[19] Pl.'s Answ. Br. at 11; Pl.'s Compl. ¶ 39.
[20] Def.'s Op. Br. in Support of its Mot. to Dismiss at 7.
[21] Pl.'s Answ. Br. at 11.
[22] *Id.*; Def.'s Op. Br. in Support of its Mot. to Dismiss at 8.
[23] Def.'s Op. Br. in Support of its Mot. to Dismiss at 1.
[24] Pl.'s Answ. Br. at 11; Def.'s Op. Br. in Support of its Mot. to Dismiss at 8.
[25] *See generally* Compl.
[26] Def.'s Op. Br. in Support of its Mot. to Dismiss at 1.

defendant's knowledge or belief that the representation was false, or reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) causally related damages to the plaintiff.

First, Defendant argues that Plaintiff has failed to plead that Defendant made any false representations.[27] Defendant argues that Plaintiff has failed to identify actionable false statements in the financial data from Defendant's news releases or the forward-looking statement from Sheffield in those news releases.[28]

Second, Defendant contends that Plaintiff has failed to allege Defendant's knowledge of the falsity of its statements.[29] Defendant argues that because Plaintiff merely "resorts to conclusory statements of knowledge by" Defendant, the knowledge element was not adequately pled.[30]

Third, Defendant argues that the complaint must be dismissed because it fails to allege intent or scienter.[31] Defendant claims that because Plaintiff has failed to identify a securities offering that occurred during the period of Plaintiff's investments in Defendant, Plaintiff has failed to allege an intent to induce investment.[32] Also, Defendant argues that Plaintiff makes out an *ipso facto* claim that suggests that because Plaintiff lost money by investing in Defendant, Defendant must have committed fraud.[33] Defendant argues that mental states may not be inferred, "in a backwards-looking way, from after-the-fact lower-than expected company performance."[34]

Fourth, Defendant asserts that Plaintiff failed to adequately allege justifiable reliance because Plaintiff at no point in his complaint explains why it was reasonable to invest because of "announcements reflecting soft corporate optimism rather than hard data[.]"[35] Also, Defendant argues that financial disclosures showing declining cash positions were available to Plaintiff at the time he chose to invest.[36]

---

[27] Def.'s Op. Br. in Support of its Mot. to Dismiss at 15.
[28] *Id.*
[29] *Id.* at 20.
[30] *Id.* at 21.
[31] *Id.*
[32] *Id.* at 22.
[33] Def.'s Reply Br. in Support of its Mot. to Dismiss at 15.
[34] *Id.* at 15-16.
[35] Def.'s Op. Br. in Support of its Mot. to Dismiss at 25.
[36] *Id.*

Fifth, Defendant argues that Plaintiff has failed to properly allege damages in his complaint because he has failed to identify the nature of his investment.[37] Defendant essentially contends that, without knowledge of the specific transactions that Plaintiff made, it is impossible to determine the damage that he suffered as a result of those transactions.[38] Further, Defendant argues that Plaintiff failed to plead that his damages were a result of his alleged reliance.

## B.    Plaintiff's Contentions

Plaintiff's argument in his unduly dense Answering Brief, and also at oral argument, is essentially that Defendant committed fraud by making statements that is "was hedging using derivatives to reduce risk, when in fact, it was actually taking on risk."[39]

Plaintiff contends that he has adequately pled the "who, what, when, where and how" of his fraud claim.[40]

First, Plaintiff argues that Sheffield's January 6, 2015 statement that Defendant's strategy to "establish a firm oil price floor and lock in corresponding cash flow" was "fraudulent" because Defendant's hedge failed to do either of those things.[41] Also, Plaintiff contends that he has adequately alleged Defendant's misrepresentations because Defendant made allegedly misleading statements regarding cash flow and the use of cash to fund capital spending.[42] Plaintiff argues that "[i]n reality, cash on hand was not simply 'helping' fund capital spending. Capital spending was burning through cash on hand such that Defendant had to issue 12,000,000 new shares, raising $1,404,000,000, on January 5, 2016."[43]

---

[37] *Id.* at 26-27.

[38] *Id.*

[39] Tr. of Oral Arg. at 36; *see also id.* 39 (PLAINTIFF: "The hedges were presented to the marketplace as something done to risk-mitigate, or reduce risk. In reality, they were risk-taking or risk-increasing[.]").

[40] Pl.'s Answ. Br. at 18 (quoting *Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542, at *4 (Del. Super. Ct. Apr. 26, 2001)).

[41] *Id.* at 20.

[42] *Id.* at 21.

[43] *Id.*

Second, Plaintiff contends that he has adequately pled knowledge because "knowledge . . . is not an element of fraud that must be pled with particularity."[44] Plaintiff argues that, because knowledge and states of mind may be "averred generally," his complaint is adequately pled.[45] Thus, as Plaintiff argues, because Defendant misrepresented its own activity, it can be inferred that it was knowable and that Defendant was in a position to know it.[46]

Third, Plaintiff also argues that, because intent or scienter is a state of mind, it too may be averred generally.[47] Plaintiff's argument is essentially that he may allege facts that give an inference of fraudulent intent by alleging facts that are "strong circumstantial evidence of conscious misbehavior or recklessness."[48]

Fourth, Plaintiff contends that he justifiably relied on Defendant's false statements by purchasing Defendant's securities under the "reasonable investor" standard in *Hubbard v. Hibbard Brown*.[49] Plaintiff argues that a reasonable investor would have considered Sheffield's comments material.[50]

Fifth, Plaintiff argues that at this 12(b)(6) stage, it is sufficient that the complaint alleges wrongful behavior that caused plaintiff "financial harm in the amount stated."[51] Plaintiff asserts that damages need not be pled with particularity.[52] Plaintiff argues that he need not identify the nature of his investment at this juncture because he has adequately pled that he suffered "financial loss"[53] which he contends is sufficient for this pleading stage.[54] Plaintiff alleges that the further damage determination is a question of fact to be determined at trial.[55]

---

[44] *Id.* at 29 (quoting *LVI Grp. Invs.*, LLC, 2017 Del. Ch. LEXIS 49, at *3).

[45] *Id.* (quoting *ABRY Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)).

[46] *Id.* at 31.

[47] *Id.* at 32.

[48] *Id.* at 35-36 (quoting *Chill v. GE*, 101 F.3d 263, 267 (2d Cir. 1996)).

[49] *Id.* at 41 (quoting 633 A.2d 345 (1993)).

[50] *Id.* at 43.

[51] *Id.* at 45 (quoting *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 157 (Del. Ch. 2003).

[52] *Id.*

[53] Compl. ¶¶ 1, 64

[54] Pl.'s Answ. Br. at 45.

[55] *Id.* at 47.

Finally, and in the alternative, Plaintiff asserts that if this Court should find his complaint deficient at this stage requiring dismissal of the complaint, such dismissal should be without prejudice with leave to amend.[56]

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Rule 12(b)(6), the Court "(i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[57] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[58]

Delaware Superior Court Civil Rule 9(b) is a heightened pleading standard requiring that "[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity."[59] However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."[60] Although "'knowledge . . . may be averred generally,' where pleading a claim of fraud has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pled facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it."[61] "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[62]

---

[56] Pl.'s Answ. Br. at 49; Tr. of Oral Arg. at 58-59.

[57] *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at *5 (Del. Super. Ct. Oct. 11, 2017) (citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)).

[58] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[59] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super. Ct. Sept. 25, 2015) (quoting Del. Super. Ct. Civ. R. 9(b)).

[60] *Id.*

[61] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207–08 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).

[62] *Id.*

# V. DISCUSSION

Plaintiff's claim must be dismissed because it fails to plead with particularity a claim of common law fraud. Even while accepting all well-pleaded facts as true, and while drawing all reasonable inferences in favor of Plaintiff, his complaint fails in some respects to meet the heightened pleading standard of Del. Super. Ct. R. Civ. R. 9(b). The complaint has deficiencies in each element of common law fraud; however, in the Court's view, the most significant deficiency of the claim is Plaintiff's nondisclosure of the nature of his investment.[63]

## A. *Plaintiff Fails to Adequately Plead a Claim for Common Law Fraud.*

In order to survive a motion to dismiss a common law fraud claim, Plaintiffs must allege:

> 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[64]

Plaintiff's complaint lacks particularity in each of these five elements.

### 1. Plaintiff has not adequately alleged false statements.

Plaintiff contends that Defendant and Sheffield misrepresented its strength and financial health on multiple occasions, specifically alleging that statements regarding Defendant's forthcoming strategies were "fraudulent misrepresentations."[65] Plaintiff relies on Sheffield's various statements related to Defendant's plans, strategies, and performance to make the argument that because these disclosures, however optimistic they were, did not play out precisely as intended, Defendant made false statements.[66]

---

[63] *See* Part V.A.5 *infra.*

[64] *TrueBlue, Inc.*, 2015 WL 5968726, at *6 (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del.1992)).

[65] Compl. ¶¶ 49-51.

[66] *Id.* ¶ 50 ("[Defendant] elected to convert most of [its] 2015 oil derivatives from three-way collars to fixed price swaps to establish a firm oil price floor and lock in corresponding cash flow."); *Id.* ¶ 53 ("we are preserving our strong cash position and balance sheet by reducing drilling activity");

Delaware courts have often held that "[e]xpressing opinions or predictions about the future, however, 'cannot give rise to actionable common law fraud.'"[67] "In that regard, the misrepresentation forming the basis for the fraud or negligent misrepresentation claim must be material, and the plaintiff generally cannot rely, for example, on puffery, expressions of mere opinion, or representations that are obviously false."[68] Courts have often disregarded forward-looking "puffery" due to the inherent "vagueness and resultant immateriality" of the statement.[69]

Plaintiff's assertion that Defendant and Sheffield's statements were anything more than opinions or forecasts is not viable. The language in the statements, and the disclaimers accompanying them,[70] appear to be merely opinions of Defendant's performance and forward-looking predictions related to newly-implemented business strategies. Delaware courts are not inclined to allow these types of statements to form the basis of a cognizable common law fraud claim.[71] Thus, given the optimistic, predictive nature of Defendant's statements, Plaintiff has failed to adequately identify any false statements.

2.    Plaintiff has failed to adequately allege knowledge.

Plaintiff has not adequately pled knowledge in his complaint because he fails to plead facts that Defendant knew of the statements' falsity. Plaintiff makes the claim that, because knowledge may be "averred generally,"—that is, without particularity—it is inferable that Defendant knew the details of its financial strategies and thus, the truth of their performance.[72]

---

*Id.* ¶ 56 ("[Defendant] has successfully implemented its high-grade horizontal drilling program and continues to deliver strong well results").

[67] *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *7 (Del. Ch. Aug. 3, 2004) (quoting *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001)).

[68] *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 775 (Del. Ch. 2014).

[69] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1428 (3d Cir. 1997); *see also* Def.'s Op. Br. in Support of its Mot. to Dismiss at 17.

[70] Def.'s Op. Br. in Support of its Mot. to Dismiss at 19-20.

[71] *In re Oracle Corp.*, 867 A.2d 904, 935 (Del. Ch. 2004), *aff'd sub nom. In re Oracle Corp. Derivative Litig.*, 872 A.2d 960 (Del. 2005) (holding "[b]ecause, by their very nature, predictions of the future are less certain than statements about past events, courts have been less apt to find forward-looking statements material and have been more dubious of claims that it was reasonable for investors to rely upon such statements in making trading decisions."); *see also Trenwick Am. Litig. Tr.*, 906 A.2d at 209 (holding that a plaintiff's fraud claim based on a company's statement that it was optimistic about future performance is the "softest of turf" on which a claim may be grounded).

[72] Pl.'s Answ. Br. at 29.

However, "[w]hile [9(b)] permits 'intent, knowledge and other condition of mind of a person' to be averred generally, '[t]o say "Defendant knew or should have known' is not adequate."[73] A common law fraud claim requires "the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth."[74]

Plaintiff makes mere conclusory statements that because the hedging strategy of Defendant was its own, Defendant must have known things about it and Defendant was, in fact, in a position to know things about it.[75] Plaintiff contends that "[t]he gravamen of Plaintiff's allegations against Defendant is that *Defendant misrepresented its own hedge program, cash flows and asset values*. It is irrefutable that the creator of its hedging strategy knew the true and exact details of its program."[76] What Plaintiff fails to adequately allege is whether Defendant knew of the statements' falsity, as required to make out a claim for fraud.

Plaintiff attempts to analogize *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.* by stating that because the Court of Chancery inferred knowledge "because the defendants allegedly failed to disclose the misconduct of which they were aware."[77] Yet, Plaintiff does not point to similar or any particular "misconduct" on the part of Defendant in this case. Plaintiff's argument circles back to the idea that because the financial strategies were Defendant's own, then Defendant must have known everything about them, including any alleged falsity. This argument fails to establish that Defendant knew of its statements' falsity. Thus, knowledge is inadequately pled here.

---

[73] *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch. 2004) (quoting *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 52 Del. 588, 598, 163 A.2d 278, 284 (Del. Super. Ct. 1960)) (holding that the court must "disregard conclusory allegations unsubstantiated by specific factual details that would support a rational inference that a particular defendant committed common law fraud.").

[74] *TrueBlue, Inc.*, 2015 WL 5968726, at *6 (quoting *Gaffin*, 611 A.2d at 472).

[75] Pl.'s Answ. Br. at 31 (quoting *Iotex Commc'ns, Inc. v. Defries*, No. 15817, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998))

> While recognizing that Court of Chancery Rule 9(b) provides that "knowledge ... may be averred generally," where pleading a claim of fraud or breach of fiduciary duty that has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pleaded facts from which it can reasonably be inferred that this "something" was knowable and that the defendant was in a position to know it.

[76] Pl.'s Answ. Br. at 29.

[77] *Id.* at 31 (citing 854 A.2d at 145).

### 3.    Plaintiff has failed to adequately allege intent or scienter.

Plaintiff's argument that intent "may be averred generally" fares no better than his argument of the same as it applied to "knowledge."

A plaintiff can adequately plead the element of intent or scienter for common law fraud by "establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior[.]"[78]

Plaintiff argues that Defendant had the necessary intent to commit fraud because it made statements after stock offerings, which were, he asserts, intended to induce investment.[79] However, Delaware courts have held that they "will not infer fraudulent intent from the mere fact that some officers sold stock."[80] Federal courts have also held that intent may not be pled merely because corporate officers sold stock.[81]

Plaintiff also argues that, because intent may be averred generally, he may allege "strong circumstantial evidence of conscious misbehavior or recklessness."[82] Plaintiff's argument is essentially that intent may be inferred because Defendant allegedly made false statements.[83] While the Court recognizes that the particularity requirement is lessened for pleading a state of mind such as intent, it cannot accept Plaintiff's reasoning on this point. Plaintiff cites to numerous cases to reiterate that intent may be averred generally in order to bypass the particularity requirement of Rule 9(b).[84] However, Plaintiff does not adequately plead "circumstantial evidence of conscious misbehavior," let alone "strong circumstantial evidence" of the same.

---

[78] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *8 (Del. Ch. Dec. 29, 2009) (quoting *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 n.8 (3d Cir. 1997)).

[79] Pl.'s Answ. Br. at 32.

[80] *Deloitte LLP*, 2009 WL 5200657 at *8 n.86.

[81] *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (holding that "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction. Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent.").

[82] Pl.'s Answ. Br. at 35-36 (quoting *Chill*, 101 F.3d at 267).

[83] *Id.* at 36 (stating "[t]he complaint alleges that, concurrent with its fraudulent misrepresentations, Defendant had knowledge of facts contradicting its misrepresentations. . . . Finally, the amended complaint identifies specific circumstances indicating conscious behavior by Defendant giving rise to a strong inference of scienter.").

[84] *Id.* at 37-39.

With the exception of his claim that Defendant made stock offerings in three consecutive years,[85] Defendant points to no evidence, circumstantial or direct, from which intent may be inferred.

The Court of Chancery stated in *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.* that "backwards-looking arguments" that fraud must have occurred because a plaintiff suffered damages will be rejected.[86] This Court recognizes the somewhat lenient pleading standard when it comes to making a claim about a person's state of mind. However, this Court will not allow that less stringent pleading standard to subvert the requirement that a plaintiff must still plead specific facts that lead to an inference of fraudulent intent.[87] Plaintiff has not done so here.

### 4. Plaintiff has not alleged adequate justifiable reliance

Plaintiff has not pled with particularity that he justifiably relied on Defendant's alleged misrepresentations because he fails to plead with particularity just how he so relied. Reliance on a corporate disclosure is viewed in terms of its materiality. A fact is material if "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act][.]"[88]

Plaintiff argues that, at this early stage, dismissal is not warranted on the grounds that the alleged misrepresentations are not material.[89] However, what Plaintiff fails to adequately assert is how his investments were affected by Defendant's statements. He repeatedly alleges that he relied, but does not adequately allege how he relied. "[C]onclusory allegation[s] that [p]laintiffs were in fact deceived by the acts, omissions and conduct described in this complaint and relied thereon to their detriment is glaringly insufficient to meet the particularity requirement of Rule 9(b)."[90]

---

[85] *Id.* at 33 ("Defendant engaged in significant public offerings *every year* from 2014 to 2016.").

[86] 906 A.2d at 209 (Del. Ch. 2006).

[87] *Id.*

> This does not require a plaintiff to probe the mindset of the defendants, what it does require is that the plaintiff set forth particularized facts regarding the precise estimates in question, the circumstances suggesting they were unsound from the inception, and why the defendants had an incentive to intentionally low-ball them.

[88] *Hubbard*, 633 A.2d at 352 n.8 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 2132, 48 L. Ed. 2d 757 (1976)).

[89] Pl.'s Answ. Br. at 42.

[90] *Anglo Am. Sec. Fund, L.P.*, 829 A.2d at 159 (Del. Ch. 2003) (internal quotation marks omitted).

Although Plaintiff argues that he pled "the exact statements and representations upon which he relied,"[91] without knowledge of the nature of his investments, reliance is conclusory and not pled with particularity.

### 5. Plaintiff has failed to adequately plead damages.

Plaintiff's argument that merely pleading that he suffered "financial loss" is adequate at this stage is unavailing. "Pursuant to Superior Court Civil Rule 9(b), allegations of fraud must be plead with particularity. This includes the fifth element of the claim-causal damages."[92]

"In order to survive a motion to dismiss a fraud claim, plaintiff must allege damages."[93] "'Delaware courts have consistently held that to successfully plead a fraud claim, the allegedly defrauded plaintiff must have sustained damages as a result of a defendant's actions,' and those damages must be based on identifiable facts."[94] "When a plaintiff fails to allege legally cognizable damages suffered as a result of reliance on any false representation, the claim must be dismissed."[95] Delaware law does not entertain speculative damage recovery.[96]

Plaintiff fails to allege legally cognizable damages. Rather he makes conclusory allegations of "significant financial loss."[97] With the exception of mentioning that his damages exceed "$15,000," Plaintiff fails to allege identifiable facts on which damages may be pled.[98]

Plaintiff cites *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.* for the proposition that "it is enough that the complaint alleges that this behavior was wrongful and caused the plaintiffs financial harm in the amount

---

[91] Pl.'s Answ. Br. at 44.

[92] *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012) (footnote omitted).

[93] *Abbott Labs. v. Owens*, 2014 WL 8407613, at *11 (Del. Super. Ct. Sept. 15, 2014).

[94] *Brevet Capital Special Opportunities Fund, LP v. Fourth Third, LLC*, 2011 WL 3452821, at *8 (Del. Super. Ct. Aug. 5, 2011) (quoting *Dalton v. Ford Motor Co.*, 2002 WL 338081, at *6 (Del. Super. Ct. Feb. 28, 2002)).

[95] *Abbott Labs.*, 2014 WL 8407613, at *12(citing *Manzo v. Rite Aid Corp.*, 2002 WL 31926606, at *5 (Del. Ch. Dec. 19, 2002), *aff'd*, 825 A.2d 239 (Del. 2003)) (internal brackets omitted).

[96] *Id.* at *11 (citing *Nucar Consulting, Inc. v. Doyle*, at *12 (Del. Ch. Apr. 5, 2005), *aff'd*, 913 A.2d 569 (Del. 2006)).

[97] Compl. ¶ 64.

[98] *Id.* ¶ 4.

stated."[99] However, his quotation from *Anglo Am. Sec. Fund, L.P.* here is taken out of context. In *Anglo Am. Sec. Fund, L.P.*, the Court of Chancery found that when the defendant "impermissibly withdrew over $22 million" of funds from the capital account, which exceeded the available balance, "and then wrongfully failed to disclose the fact, amount, or implications of the withdrawal in the [audited financial statement][,]" he caused financial harm to his other partners.[100] The Court of Chancery found that because the above facts were alleged in the complaint, the issue of damages could be inferred based on the complaint.[101] However, Plaintiff incorrectly utilizes this quotation to argue that, at the pleadings stage, it is sufficient to allege in a conclusory manner that he suffered financial injury. This is not the case.

Moreover, because Plaintiff has not identified the type of investment he made in defendant's securities, the amount of that investment, or how the investment relates to Defendant's alleged misrepresentations, he cannot adequately plead that he suffered a pecuniary loss as a result of those alleged misrepresentations. "Without such basic information about what he actually did based on Pioneer's statements, Plaintiff has not alleged particularized facts supporting justifiable reliance."[102]

Plaintiff has failed to adequately plead common law fraud because his complaint fails to "clearly place[] the defendant on notice not vaguely or generally but of the precise misconduct with which they are charged."[103] A complaint is sufficient when a plaintiff "inform[s] the defendant of the precise transactions at issue, and the fraud alleged to have occurred in those transaction[.]"[104] Here, Plaintiff has declined to reveal the nature of his investment, contending "there's nothing in the law that says that an individual fraud plaintiff has to lay bare his transactions at the pleading stage."[105]

---

[99] Pl.'s Answ. Br. at 45 (quoting 829 A.2d 143, 157 (Del. Ch. 2003)).

[100] *Anglo Am. Sec. Fund, L.P.*, 829 A.2d at 156-57.

[101] *Id.* at 157.

[102] Def.'s Reply Br. in Support of its Mot. to Dismiss at 21 (citing *Anglo Am. Sec. Fund, L.P.*, 829 A.2d at 159) (emphasis omitted).

[103] Pl.'s Answ. Br. at 19 (quoting *Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1989 WL 109406, at *5 (Del. Ch. Sept. 19, 1989)).

[104] *Id.* (quoting *Vietnam Veterans of Am., Inc. v. Guerdon Indus., Inc.*, 644 F. Supp. 951, 959 (D. Del. 1986)) (holding that "Plaintiffs have set forth their allegations of fraud with sufficient particularity to meet [the Rule 9(b)] standard.").

[105] Tr. of Oral Arg. at 55; *see id.* (PLAINTIFF: "I haven't found any case law that says a securities plaintiff in an individual fraud action has to spell out exactly how it traded in its pleadings."). *But see* Pl.'s Answ. Br. at 19 (quoting *Vietnam Veterans of Am., Inc.*, 644 F. Supp. at 959 for the opposite of his contention at oral argument, that is, "[b]y informing defendants of the precise

Without knowing what type of investment he executed, Plaintiff cannot adequately plead with particularity that he justifiably relied on Defendant's alleged misrepresentations or the extent of his damages thereof.[106] The requisite causal link between reliance and damages cannot be bridged without an understanding of how Plaintiff's investment position was affected by Defendant's statements. In this case, Plaintiff in fact needed to "lay bare his transactions at the pleading stage."[107]

For example, in *Anglo Am. Sec. Fund, L.P.*, the Court of Chancery found that a plaintiffs' allegation that they "suffered damages in excess of $9.5 million" was an adequate pleading under the Rule 9(b) particularity standard.[108] However, the court also held that what was missing from the complaint were facts that tend to link this pecuniary injury to the alleged fraud.[109]

> What is missing, however, are particular facts from which the Court and the defendants can understand how the alleged fraud caused this injury. Since the plaintiffs' reliance on the alleged misrepresentation is averred nonspecifically, it is unsurprising that the next logical step linking reliance to the resulting injury is similarly glossed over in the complaint. It is not enough for the plaintiffs to complain that the defendants knowingly failed to disclose an important matter and then jump directly to the observation that the plaintiffs believe that collectively they are now $9.5 million dollars short in their assets. The fifth element of fraud is not pled with adequate particularity.[110]

The plaintiffs in *Anglo Am. Sec. Fund, L.P.* were able to, at a minimum, allege a specific dollar amount, whereas Plaintiff has merely assured the Court that he

---

transactions at issue, and the fraud alleged to have occurred in those transactions, the Amended Complaint is clearly sufficient . . . to place the defendants on notice of the precise misconduct with which they are charged.") (internal quotation marks omitted).

[106] *See* Tr. of Oral Arg. at 4

> DEFENDANT'S COUNSEL: This pleading failure is critical because the nature of plaintiff's investment may well define or limit the scope of any claims that he may assert. Just by way of example, if plaintiff's investment was in bonds or some type of derivative security, investments that are purely contractual in nature, the terms of the governing contract might well limit the type of claim he's trying to assert here. But we don't know, and the Court doesn't know because Mr. Mooney chose not to disclose those critical details.

[107] *See id.* at 55.
[108] *Anglo Am. Sec. Fund, L.P.*, 829 A.2d at 159.
[109] *Id.*
[110] *Id.*

"suffered significant financial loss"[111] and the damages are "in excess of $15,000."[112] Plaintiff has "glossed over" the nature of the "resulting injury" in a manner somewhat akin to the plaintiffs in *Anglo Am. Sec. Fund, L.P.*[113]

Plaintiff's vague allegation of fraud is inadequately pled without identification of the type of investment he made in Defendant's securities. Even under the onerous burden on the Defendant on a 12(b)(6) motion to dismiss, with all reasonable inferences in favor of Plaintiff, the complaint still fails to reach the level of particularity commensurate with Delaware Superior Court Civil Rule 9(b). Plaintiff's fraud claim must be dismissed because the Court finds that the justifiable reliance and damages elements cannot be adequately pled without an allegation of the nature of Plaintiff's investments. Even assuming *arguendo* that this Court, taking all reasonable inferences in favor of Plaintiff and accepting all well-pleaded factual allegations as true, accepted the possibility that Defendant did make false statements, knowing they were false, with the intent to induce investment, it is impossible to ascertain how Plaintiff could have possibly relied on them and suffered damage without knowing what action he took. Otherwise, Plaintiff's argument is a mere conclusory allegation that, as a shareholder, he is entitled to recovery because Defendant's stock did not perform well. This cannot survive a motion to dismiss.

## VI. CONCLUSION

Therefore, as a result of the deficiencies in his complaint, Plaintiff has not pled with particularity the elements of a claim for common law fraud. Without more, his complaint cannot survive a 12(b)(6) motion to dismiss.

However, in both his Answering Brief and at oral argument, Plaintiff requested that, if the Court should grant Defendant's motion to dismiss, it do so "without prejudice with leave to amend" the complaint.[114] This Court grants Plaintiff leave to amend the complaint within 45 days of this opinion.[115]

---

[111] Compl. ¶ 64.

[112] *Id.* ¶ 4.

[113] *Anglo Am. Sec. Fund, L.P.*, 829 A.2d at 159.

[114] Pl.'s Answ. Br. at 49; Tr. of Oral Arg. at 58-59.

[115] *Parker v. State*, 2003 WL 24011961, at *6 (Del. Super. Ct. Oct. 14, 2003) (holding that "[Delaware Superior Court Civil Rule 15] provides that leave to amend a complaint shall be freely given when justice so requires.").

Defendant's motion to dismiss is **GRANTED, WITH LEAVE FOR PLAINTIFF TO AMEND THE COMPLAINT.**

_____
Richard R. Cooch, R.J.

cc: Prothonotary