# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BYBORG ENTERPRISES S.A., f/k/a )
JASMIN HOLDING S.A., )
                     )
     Plaintiff, )
                     )
      v. )    C.A. No. N24C-07-014 CLS
                     )
VERTEX, INC., )
                     )
     Defendant. )

Submitted: May 12, 2025
Decided: July 11, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendant's Motion to Dismiss,*
**GRANTED in part, DENIED in part**.

*Upon Consideration of Defendant's Motion to Strike*,
**DENIED**.

Julia B. Klein, Esquire of KLEIN LLC, *Attorney for Plaintiff*.

Nathan D. Barillo, Esquire and Cecil J. Jones, Esquire of COZEN O'CONNOR, *Attorneys for Defendant*.

**SCOTT, J.**

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This case arises from a contractual relationship between Plaintiff Byborg Enterprises S.A.[2] ("Byborg") and Defendant Vertex, Inc. ("Vertex") for tax compliance services.

## A. INITIAL RELATIONSHIP AND THE MASTER AGREEMENT

The parties entered into a Master Agreement ("the Agreement") effective February 9, 2021, under which Vertex agreed to provide tax preparation and servicing to Byborg.[3] The Agreement consisted of three integrated components: the Master Terms,[4] the Offering Terms,[5] and the Managed Tax Services for Returns Processing Order ("the Order").[6] Under the Agreement, Byborg purchased certain tax services as specified in the Order, subject to its terms and conditions.

---

[1] Unless otherwise noted, the facts contained herein are drawn from the Amended Complaint and the documents it incorporates by reference and are assumed to be true for purposes of this Motion to Dismiss.

[2] Plaintiff is formerly known as Jasmin Holding S.A.

[3] Plaintiff's First Amended Complaint ¶ 5, D.I. 21 ("Am. Compl.").

[4] The master terms and conditions are integrated in the Master Terms. *See* Defendant's Opening Brief in Support of its Motion to Dismiss Plaintiff's Amended Complaint at 4, D.I. 27 ("Opening Br.").

[5] The terms and conditions specific to each product or service offering licensed or purchased by the Customer are included in the Offering Terms. *Id.*

[6] The order documents applicable to the product or service purchased are in the Managed Tax Services for Returns Processing Order. *Id.*

The Agreement contained several provisions central to the present dispute. Section 6(b)(i) set forth Vertex's warranty that "[a]ll Services provided or performed pursuant to an Order will be (A) performed in a competent and professional workmanlike manner consistent with industry standard; and (B) conform to the specifications and descriptions or achieve the functionality set forth in such Order …"[7] As additional protection, Byborg allegedly required Vertex to obtain liability insurance.[8]

The Agreement also included disclaimers. Section 6(c) provided that "Vertex's provision of Products or Services pursuant to an Order hereunder does not constitute legal or tax advice and Customer assumes sole responsibility. . . ."[9] Section 6(d) disclaimed all representations and warranties except those expressly contained in Paragraph 6.[10]

Most central to this litigation, Paragraph 8 established a limitation of liability. This provision provided:

> "[e]xcept for … or (iii) a party's breach of its obligations of confidentiality under Section 3, in no event shall either party be liable to the other for any special, consequential, punitive, incidental, or indirect damages, or for any loss of profits, revenue, data, or data use

---

[7] Am. Compl., Ex. A ("Master Agreement") § 6(b)(i).

[8] Am. Compl. ¶10; Answering Brief in Opposition to Motion to Dismiss at 2, D.I. 29 ("Answer Br.").

[9] Master Agreement § 6(c).

[10] *Id.* § 6(d).

however caused, under any theory of law, including negligence, tort, breach of contract or otherwise, and whether or not that party has been advised of the possibility of such damages … "[11]

## B. PERFORMANCE ISSUES AND SUBSEQUENT PROCEEDINGS

In summer 2022, Byborg began discovering deficiencies in Vertex's performance.[12] Per the Amended Complaint, Byborg found itself delinquent in filing taxes in several jurisdictions and faced liens and pending collection actions.[13] Specifically, Byborg alleges Vertex failed to file certain tax returns, failed to timely submit tax registrations, and mistakenly registered Byborg in jurisdictions where registration was not required.[14]

Between August 2022 and January 2023, the parties discussed these issues.[15] Yet the problem allegedly persisted.[16] As a result, Byborg terminated Vertex for cause on February 16, 2023.[17]

Following termination, on August 17, 2023, Byborg sent Vertex a pre-suit demand letter seeking compensation for damages allegedly resulting from Vertex's

---

[11] *Id.* § 8.

[12] Am. Compl. ¶ 11.

[13] *Id.* ¶¶ 11–12.

[14] *Id.* ¶ 12–13.

[15] *Id.* ¶¶ 14–16.

[16] *Id.* ¶ 16.

[17] *Id.* ¶ 17.

failures.[18]   Vertex responded on September 22, 2023, denying all liability and rejecting the demand.[19]

Byborg brought this action on July 1, 2024.[20]   Vertex then moved to dismiss.[21] After stipulation, Byborg amended its Complaint.[22]  The Amended Complaint asserts two claims: Count I for breach of contract and Count II for negligent hiring and supervision.[23]  Byborg seeks damages including tax penalties and interest, costs to retain a replacement firm, internal costs for reconciling tax obligations, fees for external service providers and legal counsel, and payments made to tax authorities including the Canada Revenue Agency.[24]  Byborg also seeks attorneys' fees and related court costs.[25]

---

[18] Am. Compl. ¶ 18.

[19] *Id.* ¶ 19.

[20] *See generally* Complaint for Breach of Contract, D.I. 1.

[21] *See generally* D.I. 15.

[22] *See generally* Am. Compl.

[23] *Id.* at 9–11.

[24] *Id.* at 8–9.

[25] *Id.* at 12.

On February 14, 2025, Vertex filed the instant Motion to Dismiss under Rule 12(b)(6) and Motion to Strike under Rule 12(f).[26]  Both parties submitted briefs,[27] and the matter is ripe for decision.

## STANDARD OF REVIEW

### A. MOTION TO DISMISS

Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[28]  The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[29]  But "it is appropriate . . . to give the pleader the benefit of all reasonable inferences that can be drawn from its pleading."[30]

---

[26] *See generally* Defendant's Motion to Dismiss Plaintiff's Amended Complaint, D.I. 27.

[27] *See generally* Answer Br.; Defendant Vertex, Inc.'s Reply Brief in Support of its Motion to Dismiss and Motion to Strike Plaintiff's Amended Complaint, D.I. 33 ("Reply Br.").

[28] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).

[29] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[30] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. Sept. 25, 2015) (quotation omitted).

### B. MOTION TO STRIKE

Under Superior Court Rule 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."[31]  Motions to strike "generally are disfavored and are 'granted sparingly and only when clearly warranted with all doubt being resolved in the nonmoving party's favor.'  A motion to strike is granted if the challenged averments are: (1) not relevant to an issue in the case; and (2) unduly prejudicial."[32]

### DISCUSSION

### A. MOTION TO DISMISS

### 1. The Breach of Contract Claim Survives.

To state a claim for breach of contract, the plaintiff must establish "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[33]  The elements are not at issue, but Vertex challenges Count I primarily on the basis that any damages Byborg sought are consequential in nature, and therefore, barred by the limitation of liability clause in

---

[31] Super. Ct. Civ. R. 12(f).

[32] *NewYork.Com Internet Holdings, Inc. v. Ent. Benefits Grp., LLC*, 2015 WL 4126653, at *4 (Del. Ch. July 8, 2015) (citing *Salem Church Assocs. v. New Castle Cty.*, 2004 WL 1087341, at *2 (Del. Ch. May 6, 2004)).

[33] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *10 (Del. Super. Aug. 16, 2021) (citing *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Feb. 22, 2021)).

Paragraph 8 of the Agreement.[34]  This argument, while potentially meritorious after factual discovery, is premature at this stage.

Delaware law recognizes distinctions between general (or direct) damages and consequential (or special) damages.  General damages are those that flow directly and immediately from the wrong complained of, while consequential damages do not flow directly from the breach but result from its consequences.[35]  Delaware courts have consistently emphasized the distinction between these categories is contextual and relative, not absolute.[36]  Damage that might be considered general in relation to one type of contract may be special in relation to another.[37]  Notably, determining whether particular damages are direct or consequential typically requires factual development beyond what is available at the pleading stage.  "[W]hat is important at the pleadings stage is that [the plaintiff] has given [the defendant] sufficient notice as to the damages it is claiming."[38]

The provision regarding limitation of damages is undisputed.  But the parties dispute the categories of damages.  Vertex argues tax penalties and interest are

---

[34] Opening Br. at 10–13.

[35] *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, 2011 WL 549163, at *6 (Del. Ch. Feb. 16, 2011) (citing Black's Law Dictionary 353 (5th ed.1979)).

[36] *Id.*

[37] *Id.* (citations omitted).

[38] *Id.* at *7 (citing *Twin Coach Co. v. Chance Vought Aircraft Inc.,* 163 A.2d 278, 287 (Del. Super. 1960)).

consequential.[39] Conversely, Byborg contends at least some of its damages—including unpaid taxes due to Vertex's alleged failures—constitute direct damages.[40] The Amended Complaint also alleges damages from having to retain replacement services and costs of remediation.[41] Whether these damages flow directly from Vertex's alleged breach of its obligation to provide competent tax services or are merely consequential results cannot be determined without understanding the circumstances of the alleged breaches and the causal relationship between the breaches and each category of damage.

Vertex's reliance on caselaw finding similar damages to be consequential is unavailing at this stage. Each case cited involved determinations made after factual discovery, not on motions to dismiss.[42] Indeed, as in *AKRAY America, Inc. v. Navigator Business Solutions, Inc.*, "it would be premature to decide the limitation of damages issue at this time."[43]

---

[39] Opening Br. at 12.

[40] Answer Br. at 12–14.

[41] Am. Compl. ¶ 22.

[42] Opening Br. at 12–13 (citing *Relax Ltd. v. ANIP Acquisition Co.*, 2011 WL 2162915 (Del. Super. May 26, 2011); *ARKRAY Am., Inc. v. Navigator Bus. Sols., Inc.*, 2023 WL 5746710 (Del. Super. Sept. 5, 2023); *Winshall v. Viacom Int'l, Inc.*, 2019 WL 960213 (Del. Super. Feb. 25, 2019); *Trust-ED Solutions v. Gilbert LLP*, 2022 WL 16641902 (Del. Super. Oct. 18, 2022); *eCommerce Ind. Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678 (Del. Ch. Sept. 30, 2013)).

[43] *ARKRAY Am., Inc. v. Navigator Bus. Sols., Inc.*, 2021 WL 2355234, at *8 (Del. Super. June 9, 2021).

At this juncture, Byborg has adequately pleaded damages resulting from Vertex's alleged breach. Whether those damages are properly characterized as direct or consequential, and whether they fall within the limitation of liability clause, requires further factual development. Thus, the breach-of-contract claim survives.

### 2. The Negligent Hiring and Supervision Claim is Barred by The Economic Loss Doctrine.

Vertex argues Count II, negligent hiring and supervision, must be dismissed because it is barred by the Economic Loss Doctrine.[44] The Court agrees.

"The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to *other* property) and, the only losses suffered are economic in nature."[45] "The economic loss rule is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged."[46] "The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law."[47]

---

[44] Opening Br. at 8–10.

[45] *Brasby v. Morris*, 2007 WL 949485, at *6 (Del. Super. Mar. 29, 2007) (citing *Marcucilli v. Boardwalk Builders,* 1999 Del. Super. LEXIS 597, at *11, 1999 WL 1568612 (Del. Super. Dec. 22, 1999)) (emphasis in original).

[46] *Id.*

[47] *Id.*

For a tort claim to survive alongside a contract claim under Delaware law, the plaintiff must allege that the defendant breached a duty independent of the contract.[48] This independent duty must arise from a source other than the contractual relationship itself.[49] The mere fact that a tort claim uses different language or invokes a different theory does not suffice if the duty allegedly breached is ultimately one created by contract.

Byborg's negligent hiring and supervision claim rests entirely on duties arising from the Master Agreement. Count I alleges Vertex breached its contractual obligation to provide tax services "in a competent and professional workmanlike manner consistent with industry standards."[50] Count II, styled as a tort claim, alleges Vertex negligently hired and supervised employees who then failed to provide the same tax services in the same manner.[51] The overlap is substantial, if not complete.

Byborg argues negligent hiring and supervision constitutes a "parallel tort" that can proceed alongside the contract claim, citing *AKRAY* for the proposition that

---

[48] *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co., Inc.,* 2005 WL 445710, at *3 (Del. Super. Feb. 23, 2005).

[49] "As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Id.* (quoting *Pinkert v. Olivieri,* 2001 WL 641737, at *5 (D. Del. 2001)).

[50] Am. Compl. at 9–10.

[51] *Id.* at 10–11.

certain torts may escape the Economic Loss Doctrine.[52]  This reliance is misplaced. *ARKRAY* recognized only a narrow exception for pre-contractual fraud—torts arising from inducement to enter the contract rather than from performance under it.[53]

Here, Byborg does not allege pre-contractual fraud or any conduct inducing it to enter the Agreement.  Instead, the negligent hiring claim arises from Vertex's alleged failure to properly perform the contracted services.  The Amended Complaint identifies no duty owed by Vertex to properly hire and supervise employees independent of its contractual obligation to provide competent tax services.  Whether framed as breach of contract or negligent supervision, the claim remains one for disappointed contractual services.

Because Count II seeks recovery for the same economic losses arising from the same conduct as Count I, and because Byborg has failed to identify any duty independent of the Master Agreement, the negligent hiring and supervision claim is barred by the Economic Loss Doctrine and warrants dismissal.

---

[52] Answer Br. at 20 (citing *ARKRAY Am., Inc.*, 2021 WL 2355234).

[53] *ARKRAY*, 2021 WL 2355234, at *6.

## B. MOTION TO STRIKE

Vertex argues the portions of the Amended Complaint related to "settlement communications" and insurance coverages should be stricken under Rule 12(f).[54] Specifically, Vertex seeks to strike paragraphs 10, 18, and 19, and Exhibits C–E from the Amended Complaint because those portions are not relevant to this matter and unduly prejudicial.[55]

Paragraph 10 mirrors Section 9 of the Agreement, which requires that Vertex maintain professional and commercial general liability insurance.[56] Vertex argues the insurance reference violates Delaware Rule of Evidence 411, which bars evidence of insurance to prove negligence or wrongful conduct and serves only to prejudice Vertex by suggesting it has deep pockets.

The Court finds no basis to this argument. The inclusion of an insurance requirement in a commercial contract is common practice. Byborg does not cite the insurance provision to prove Vertex acted negligently but rather to demonstrate the comprehensive nature of the parties' agreement. At this stage, the Court is capable

---

[54] Opening Br. at 14–16.

[55] *Id.* Vertex also contends that these portions should be stricken because they are not admissible under DRE 408 and 411.

[56] *See* Am. Compl. ¶ 10; Master Agreement § 9. Although ¶ 10 is a direct quote from Ex. A, the Master Agreement, Defendant does not seek to strike the exhibit.

of considering the allegations without drawing improper inferences about Vertex's potential ability to pay damages.

Vertex also seeks to strike all references to the parties' pre-suit correspondence—paragraphs 18 and 19, as well as exhibits C–E, arguing these constitute inadmissible settlement communications under Delaware Rule of Evidence 408.[57] Paragraph 18 is a quote from Byborg's demand letter, attached to the Amended Complaint as Exhibit C.[58] Paragraph 19 states Vertex replied to Byborg's demand letter and references Exhibits D and E.[59]

The Court need not identify whether these materials constitute "settlement communications" because, even assuming they fall within Rule 408's scope, Vertex has not met its burden under Rule 12(f). Vertex claims undue prejudice but offers only conclusory assertions. It argues the references are "inflammatory"[60] and an "obvious effort to unfairly prejudice Vertex,"[61] but fails to explain how their inclusion materially prejudices its ability to defend this action. The fact that the

---

[57] Opening Br. at 14–15.

[58] *See* Am. Compl. ¶ 18.

[59] *Id.* ¶ 19.

[60] Opening Br. at 16.

[61] *Id.* at 14.

references show Vertex denied liability—a position it maintains in this litigation—hardly constitutes prejudice.

Vertex provides *August v. Hernandez* and *Clough v. Wal-Mart Stores, Inc.* to support their arguments.[62]  Indeed, the court granted the motions to strike in both cases, but the bases are distinguishable from this case.  In *August*, the court granted the motion because the insurance carrier information was "not being offered to establish another purpose outside of Defendants' alleged negligence."[63]  *Clough*, on the other hand, involved a post-trial motion where the court excluded a settlement offer that was offered to challenge the jury's damage award.[64]  Neither case applies here.

The insurance provision is part of the contract itself and relevant to understanding the parties' agreement.  The pre-suit communication provides context for the dispute.  While evidentiary objections to these materials may be appropriate at a later stage, they do not warrant striking at this juncture.

Accordingly, the Motion to Strike is **DENIED**.

---

[62] Reply Br. at 10–11 (citing *Aug. v. Hernandez*, 2020 WL 95658, at *3 (Del. Super. Jan. 6, 2020); *In re Clough v. Wal-Mart Stores, Inc.*, 1997 WL 528313, at *1 (Del. Super. July 30, 1997), *aff'd sub nom. Wal-Mart Stores, Inc. v. Clough*, 712 A.2d 476 (Del. 1998)).

[63] *Aug.*, 2020 WL 95658, at *3.

[64] *In re Clough*, 1997 WL 528313, at *1 ("Clearly, evidence of Ms. Clough's offer of settlement and of the arbitrator's award would have been inadmissible at trial.").

## C. RECOVERY OF ATTORNEY FEES

Vertex moves to dismiss Byborg's request for attorneys' fees, arguing the Agreement contains no fee-shifting provision, and Delaware follows the American Rule.[65] The Court agrees that dismissal is appropriate, though without prejudice.

Under the American Rule, each party bears its own attorneys' fees absent a contractual provision, statutory authorization, or recognized exception.[66] The exception to this rule is narrow, including fee-shifting for bad-faith conduct.[67] The bad-faith exception only applies in "extraordinary circumstances" "to deter abusive litigation and protect the integrity of the judicial process."[68]

Byborg concedes the Agreement contains no fee-shifting provision and cites no statutory basis for recovering fees.[69] Instead, Byborg argues it included the fee request to preserve its right to seek fees should circumstances arise that would justify deviation from the American Rule, particularly under the bad-faith exception.[70]

---

[65] Opening Br. at 16–17.

[66] *DeMatteis v. RiseDelaware Inc.*, 315 A.3d 499, 508 (Del. 2024) (citing *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242, 245 (Del. 2007); *Johnston v. Arbitrium (Cayman Is.) Handels AG*, 720 A.2d 542, 545 (Del. 1998)).

[67] *Id.* (citing *Montgomery Cellular Holding Co., Inc. v. Dobler*, 880 A.2d 206, 227 (Del. 2005)).

[68] *Id.* (citing *Brice v. State Dept. of Correction*, 704 A.2d 1176, 1179 (Del. 1998); *Montgomery Cellular*, 880 A.2d at 227).

[69] Answer Br. at 21–22.

[70] *Id.* at 22–23.

The concern about potential bad-faith conduct, at this stage, is premature. The case Byborg cites that most closely supports its position, *Continental Finance Co., LLC v. ICS Corp.*,[71] actually undermines it. There, the court struck a request for attorneys' fees because "there is no current allegation that [the defendant] is engaging in bad faith litigation conduct."[72] So too here.

Because Byborg has identified no current basis for fee-shifting, the request for attorneys' fees is dismissed, without prejudice. Should circumstances arise during the course of litigation that would support a claim for fees, the Court would be amenable then.

## CONCLUSION

For the foregoing reasons, Vertex's Motion to Dismiss is **GRANTED** as to Count II and Byborg's request for attorneys' fees and **DENIED** as to Count I. The Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Calvin L. Scott*
Judge Calvin L. Scott, Jr.

---

[71] 2020 WL 836608 (Del. Super. Feb. 20, 2020).

[72] *Id.* at *5.